(No. 17418.—Decree affirmed.)
ORVILLE E. BABCOCK *et al.* Appellants, *vs.* THE CHICAGO
RAILWAYS COMPANY *et al.* Appellees.

*Opinion filed February 16, 1927—Rehearing denied April 7, 1927.*

1. APPEALS AND ERRORS—*when a constitutional question is involved.* A bill filed by parties claiming the rights of stockholders, under section 3 of article 11 of the constitution, by virtue of a trust agreement and seeking to enjoin action of the directors of a corporation until other directors can be elected by the complainants and others, as stockholders, involves a construction of the constitution as well as of the trust agreement, and an appeal may be taken directly to the Supreme Court from a decree dismissing the bill.

2. CORPORATIONS—*stockholders of record have right to vote although equitable interest is in others.* Those who appear on the stock register or transfer book of a corporation as stockholders have the right to vote for directors and to be elected directors although the whole equitable interest in the stock represented by them is in some other person.

3. SAME—*necessary documents in re-organization and consolidation of corporations must be construed together.* The necessary documents involved in the re-organization of insolvent corporations by their consolidation into a new corporation must all be construed together where they constitute one entire scheme of reorganization and refer to and are dependent upon one another.

4. SAME—*when the holders of participation certificates are not stockholders—proxies.* Where the re-organization of certain insolvent street railway corporations is effected by the creation of a new corporation, as required by the terms of a municipal ordinance renewing the franchise, and all the stock of the former companies is placed in trust in the names of certain individuals as depositaries who are the sole owners of the capital stock of the new corporation, the holders of stock in the former companies, to whom were issued participation certificates under the trust agreement, are not stockholders in the new corporation and have no right to inspect the books and records, and the trust agreement does not constitute a revocable proxy of the right to vote for directors and officers of the new corporation.

5. SAME—*when trust agreement making trustees stockholders with right to vote is not illegal.* Where the re-organization of certain insolvent public utilities is effected by the creation of a new corporation, as required by a municipal ordinance renewing the

franchise, a trust agreement giving the stockholders in the new corporation the full voting privilege, with a declaration of trust that all dividends paid or income received from deposited securities shall be paid to former stockholders, who were given participation certificates arranged in series according to certain priorities, is not unlawful or contrary to public policy where it does not constitute a mere pooling of stock but is for the benefit of all parties, including bondholders, mortgagees and the city itself.

6. SAME—*trustee may be made stockholder with right to vote stock.* Executors, administrators, conservators, guardians, receivers and testamentary or other trustees may vote corporate stock in their hands at all meetings of stockholders, without regard to who is entitled to receive the beneficial interest in the dividends or the stock itself upon distribution, and a trustee who is registered as the owner of stock is vested with the legal and equitable title, subject only to the provisions of the trust, and has the right to vote the stock and is eligible to the office of director.

7. POWERS—*power coupled with interest is irrevocable.* Where an authority or power is coupled with an interest or is given as a security it is from its very nature irrevocable unless there is an express stipulation that it may be revoked.

8. PLEADING—*complainants must allege facts showing cause of action.* Complainants claiming the rights of stockholders in a corporation and alleging mismanagement of the directors and officers and of parties who are stockholders of record must allege facts constituting a cause of action or ground of complaint, and it is not sufficient for them to say that the allegations are as definite as possible because no facts are known on which to base conclusions of improper conduct and control of the affairs of the corporation.

9. INJUNCTIONS—*general rule as to when attorney's fees may be allowed on dissolution of injunction.* Counsel fees necessarily incurred in procuring the dissolution of an injunction may be allowed as damages, but where the injunction is only ancillary to the relief sought and its dissolution merely incidental to the defense made on the merits to the whole case, counsel fees incurred by the defendant cannot be assessed.

10. SAME—*judgment dissolving injunction cannot be reviewed in proceeding to assess damages.* Where an appeal is taken to the Appellate Court from an order for a temporary injunction, the reversal of the order dissolves the injunction and conclusively establishes that it was wrongfully sued out, and the judgment of the Appellate Court cannot be reviewed in a proceeding to assess damages for the wrongful suing out of the injunction.

11. SAME—*when defendants are entitled to attorney's fees incurred in dissolving injunction against corporation.* In a suit by

complainants claiming the rights of stockholders in a corporation and seeking to enjoin action of the directors until after a meeting of complainants and others as stockholders, the defendants will be entitled to attorney's fees incurred in an appeal to the Appellate Court from an order for a temporary injunction where the order is reversed on the ground that the injunction was wrongfully sued out and where the services rendered in procuring the dissolution of the injunction can be distinguished from the general defense of the suit on the merits.

HEARD, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

HENRY S. ROBBINS, for appellants.

TENNEY, HARDING, SHERMAN & ROGERS, KIRKLAND, PATTERSON & FLEMING, JAMES M. SHEEAN, and CHARLES S. BABCOCK, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The principal controversy in this case, and the one on which the right of direct appeal from the trial court to this court is based, is between some of the holders of participation certificates of the Chicago Railways Company issued under an agreement dated August 1, 1907, who sue in their own behalf and also in behalf of all other holders of such certificates who may wish to join in the suit, on the one hand, and depositaries under that agreement, the Chicago Railways Company, its directors and others, on the other hand. The holders of the participation certificates filed a bill in the circuit court of Cook county praying that so much of the agreement of August 1, 1907, as confers on the depositaries thereunder the right to vote the stock of the Railways Company be decreed to be no longer operative and that the control of the corporation be decreed to be henceforth in the directors to be elected by the holders of the participation certificates; that a meeting of such certificate holders be held under the supervision of the court

for the selection of directors of the Railways Company in lieu of the present directors; that in such selection the certificate holders be allowed to cumulate their votes, as provided in the constitution of the State; that the present directors be required to take such steps as may be necessary to effect the substitution of the newly elected directors, and that the depositaries be ordered to file in the suit a true list of the present holders, of all classes, of participation certificates and their addresses; that the present directors be enjoined from taking any action as directors prior to the election of new directors by the holders of participation certificates and from voting any of the stock of the Railways Company for the election of directors, or any other action of the company, until the further order of the court and until after the meeting of the holders of participation certificates; that an account be taken of the receipts and disbursements of the Railways Company since its organization and of all moneys expended for political or other improper or unauthorized purposes, and that any of the defendants who has authorized or concurred in such payments be decreed to re-pay the same to the Railways Company; that the defendant Henry A. Blair be required to account for all moneys received by him as salary or otherwise from the Railways Company and to re-pay to the company all such sums as shall be adjudged to be in excess of a reasonable salary as president of the company; that the present directors be enjoined from further negotiation with the city of Chicago in regard to a sale or other disposition of the property of the Railways Company, and that the city of Chicago be enjoined from entering into any contract or agreement with the present directors, or prior to the election of new directors, for the purchase of the Railways Company's property; that the present directors be enjoined from creating or permitting any defaults under any of the mortgages given by the Railways Company, and that the trustees under those mortgages be enjoined from taking any

proceedings to foreclose said mortgages in any other court than the circuit court of Cook county, and that the court appoint receivers of the Railways Company if and when necessary to protect the rights of the holders of participation certificates and the jurisdiction of the court to grant the relief prayed for. Some of the defendants demurred to the bill, others answered, the court sustained the demurrers and dismissed the bill as to all the parties for want of equity, and the complainants appealed to this court, assigning among other errors that the court erred in not holding that the voting provision of the agreement of August 1, 1907, as construed by the court, violated section 3 of article 11 of the constitution of the State. The appellees, the Chicago Railways Company and the depositaries under the agreement of August 1, 1907, have moved to transfer the cause to the Appellate Court, and the motion was taken with the case.

The following facts appear from the pleadings: The Chicago Union Traction Company operated on the north and west sides of the city of Chicago separate systems of street railroads as the assignee of the lessees of the corporations by which they had been constructed. It became insolvent, and on April 22, 1903, receivers were appointed by the circuit court of the United States for the lessor companies as well as the Chicago Union Traction Company, and the two systems of street railroads were operated by such receivers under the direction of the court until December 26, 1907. During the receiverships the principal ordinance under which the street car systems were constructed and operated expired and it became necessary to their continued operation to get a new ordinance permitting such operation. During the negotiations for this purpose the city authorities made it an imperative condition that a new corporation should be formed in which all interests and ownerships of the existing systems should be merged. Thereupon, preliminary to further re-organization,

the Chicago Railways Company was organized under the laws of the State of Illinois with a capital stock of $100,000, divided into one thousand shares of $100 each, for the purpose of acquiring, operating, reconstructing, re-equipping and extending the system of street railways then in the hands of receivers and theretofore operated by the Chicago Union Traction Company. On February 11, 1907, the city of Chicago passed an ordinance granting to the Chicago Railways Company the privilege of reconstructing, maintaining and operating the systems of street railways then in the hands of the receivers until February 1, 1927, unless the city should sooner purchase the railways, as provided in the ordinance. The ordinance required the Railways Company to acquire all the property of the old companies which had constructed the street railroads or were interested in them as lessors or lessees and all the rights of persons, firms or corporations having any interest or rights in those companies. Attached to the ordinance was a form of agreement to be entered into by the Chicago Title and Trust Company and the Railways Company and the persons, firms or corporations who owned or controlled certificates of stock of the Chicago West Division Railway Company, the North Chicago City Railway Company, the West Chicago Street Railroad Company, the North Chicago Street Railroad Company and the Chicago Union Traction Company, under which such persons, firms and corporations were to become parties thereto by depositing and surrendering to the trust company their certificates of stock, endorsed in blank for transfer. The agreement also provided that in the event of the acceptance of the ordinance and the approval of the plan of re-organization as provided in said ordinance, the trust company, or the Railways Company with the approval of the trust company, was authorized to dispose of all or any part of the beneficial interests appertaining to the shares of stock so deposited which would be necessary to carry into effect the

terms of the plan of re-organization, but that no plan of re-organization should be operative unless and until the allotment of securities of the Railways Company or other benefits to the depositors should be approved by Peter S. Grosscup and John C. Gray, and in case of a disagreement between them they should submit the question in disagreement to a third person to be selected by them, and the decision of a majority of such three persons should be final and binding upon all the parties. In pursuance of the ordinance the plan of re-organization was approved by Judge Grosscup and Professor Gray and accepted by the Railways Company, which thereupon filed its acceptance of the ordinance. Under this agreement the shareholders of the underlying companies deposited their certificates of stock with the trustee, and the plan of re-organization as agreed upon was put into effect by the entry of orders in the foreclosure suits directing the receiver to deliver possession of the property to the Railways Company, the acceptance of the ordinance by that company, and the execution of first and second mortgages on the property as required by the plan of re-organization, the transfer under a deposit agreement of the 1000 shares of the capital stock of the Railways Company to five men, who were designated as depositaries, to whom the five appellees who are designated in this suit as depositaries are the successors. The deposit agreement, which was dated August 1, 1907, provided, in accordance with the plan of re-organization, that the total interest in the capital or principal represented by the shares of the capital stock of the Railways Company and the other deposited securities, and in the dividends or income from time to time to be paid thereon, should be divided into 265,100 equal parts, represented and evidenced by participation certificates, which should be issued by the depositaries in certain proportions for the stock of such corporation and in series numbered 1, 2, 3 and 4, each series having a certain priority over all those having a higher

serial number. It was expressly provided in the certificates that all the provisions of the agreement of August 1, 1907, were made a part of the certificates in all respects and with like effect as if set forth therein at length, and that the certificates conferred no rights, powers, privileges or interest except as in the agreement mentioned, and in case of any variance between the certificates and the agreement the provisions of the agreement should control, and that the rights of the holders of the participation certificates should be in all respects subject to the prior rights of the holders of bonds and collateral notes to be at any time issued under the first mortgage, consolidated mortgage and collateral note agreement in the plan of re-organization mentioned and provided for. In compliance with the plan of re-organization all the stock of the Railways Company was transferred to Adolphus C. Bartlett, Chauncey Keep, Charles H. Hulburd, Albert A. Sprague and Charles G. Dawes as depositaries, who thus became the stockholders of record until their respective resignations, when their successors became such stockholders. These are now Harrison B. Riley, Abel Davis, Frank G. Gardner, Henry J. Tansley and Holman D. Pettibone, who are appellees.

The motion to transfer the cause to the Appellate Court is resisted on the ground that it involves the construction of section 3 of article 11 of the constitution, which imposes upon the General Assembly the duty of enacting a law providing that in all elections for directors of incorporated companies every stockholder shall have the right to vote the number of shares of stock owned by him for as many persons as there are directors to be elected, or to cumulate the shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock would equal, or to distribute them among as many candidates as he thinks fit, and such directors shall not be elected in any other manner. This section prohibits the election of directors in such a way as denies the right of

stockholders to elect in the manner provided by law. The appellants claim that under their participation certificates they are holders of the stock in the Chicago Railways Company, which they have the right to vote in the manner provided by the constitution, and that by the provision of the contract that the depositaries shall be entitled to vote the stock at all meetings of the stockholders they are deprived of this constitutional right; that there is a complete separation of the voting power from the property interest, and that the constitution does not permit such separation. The decision of the case involves not only a construction of the contract but also a construction of the constitution with reference to the contract, and the motion to transfer is denied.

The ordinance required, as a condition precedent to its acceptance by the Railways Company, the adoption of a plan of re-organization and re-adjustment which should be consistent with the terms of the deposit agreement mentioned in the ordinance, the form of which was attached as an exhibit to the ordinance. This plan as finally modified was approved as required by the ordinance and the deposit agreement, the deposit agreement was executed and the certificates of stock were deposited according to its terms. The plan provided for the raising of the money necessary for the rehabilitation of the system in the manner and to the amounts fixed by the plan, which provided in detail for the execution of the deposit agreement, the participation certificates, the amount and character of the securities to be issued, which included a first mortgage for the amount which might be necessary to enable the Railways Company to comply with the requirements of the ordinance concerning rehabilitation, additions, extensions, subways and other construction work, a consolidated second mortgage for an amount not exceeding $37,500,000, and an issue of $5,000,000 of collateral notes. The plan appointed five persons a committee in charge of the plan

and of any steps by them deemed necessary or expedient to promote, effectuate or consummate it, with authority to prescribe the form and terms of the new securities to be issued by the Railways Company. The first mortgage, under which $59,926,000 of bonds are outstanding, provided for the creation of a finance committee, without whose approval the amounts of the earnings of the Railways Company applicable to the payment of dividends on the stock of the Railways Company or otherwise distributable to those having interests in such stock or the dividends thereon could not be fixed or distribution thereof made. The plan provided that the rights of the certificate holders should always be subordinate to those of the bondholders, and that no proxy could be given by the depositaries, as stockholders of the Railways Company, to vote its stock without the previous approval of the Railways Company.

The bill proceeds upon the theory that the power of the depositaries to vote the stock of the Chicago Railways Company is a revocable proxy, and prays that so much of the deposit agreement of August 1, 1907, as confers the right to vote the stock be decreed no longer operative and that the control of the company be decreed to be in directors to be elected by the holders of the participation certificates. The holders of participation certificates have never been stockholders of the Railways Company. The entire stock of that company was assigned by the original stockholders, in pursuance of the deposit agreement, to the depositaries named in it, who afterward assigned it, and the title to all the shares of such stock is now held by the defendants named as depositaries in this suit. No proxy was given to anyone. So far as the corporation is concerned, its stockholders are those who have the legal title, and the corporation need not look beyond its own record to ascertain who are its stockholders. Section 44 of the general Corporation act provides that the stock register or transfer book shall be the only evidence as to who are the stock-

holders entitled to examine such stock register or transfer book or to vote at any meeting of the stockholders. Those who appear there as stockholders have the right to vote for directors and to be elected directors, though the whole equitable interest be in some other person; and this was the law before the passage of the general Corporation act. *People* v*: Lihme,* 269 Ill. 351.

The depositaries having the legal title to the stock are entitled to elect the directors of the corporation because they are such stockholders. It is true that they are merely trustees; that they have as stockholders no pecuniary interest in the stock; that by the express terms of the trust they are protected from liability for their acts as trustees; and the total interest represented by the shares of stock has been divided into 265,100 equal parts, represented and evidenced by the participation certificates, which are subject to the provisions of the deposit agreement and of the plan of re-organization. The provision that the whole interest in the property shall be represented and evidenced by the participation certificates is not the only provision of the contract which is binding on the parties, and the deposit agreement does not contain all the terms which must be considered in its interpretation. The agreement marks one step in the re-organization of the interests of the Chicago Union Traction Company and its underlying corporations and the re-adjustment of their relations to the street railway property and to one another. The rights of the owners of all these various interests were taken into consideration in the ordinance, the plan of re-organization and re-adjustment and its subsequent modification and approval by Judge Grosscup and Professor Gray, and the deposit agreement. These documents were all a part of one entire scheme, they refer to and are dependent upon one another, and one of them cannot be interpreted and construed without regard to the provisions of the others. By their execution and the deposit of their certificates of stock a trust was created

in the depositaries who were the holders of the stock of the Chicago Railways Company, to hold that stock for the purposes stated in the agreement, but in all respects subject to the prior rights of the holders of the bonds and collateral notes issued under the first mortgage and the consolidated mortgage and collateral note agreement.

The Chicago Railways Company was a new corporation organized for the purpose of acquiring the street railways which were then in the hands of receivers, of receiving a grant of the right to continue the operation of them and of reconstructing, operating and extending them. These street railways had been operated by receivers for more than three years, the authority for operating them in the streets had expired, the corporation which had operated them as lessee was insolvent and the stock of the other corporations which were interested as owners and lessors or lessees was depreciated, the mortgages which were liens on the property were in process of foreclosure, and it was necessary to spend a large amount of money for the rehabilitation of the property and the furnishing of new equipment as well as for extensions. The city required, as a preliminary to a grant of the right to operate the railways, the formation of a new corporation into which should be merged all interests and ownerships of the existing systems under a plan of re-organization which should be fair and just to every class of stocks, securities and evidences of indebtedness. The new corporation had the authority to acquire the property but it had no adequate capital. The city could dictate the terms for its grant of the right to operate, so long as such terms were not in contravention of any constitutional provision. The interests of the stockholders of the various corporations, owners, lessors or lessees, and of the holders of the securities of those corporations, were of comparatively little value unless the proposed ordinance was adopted and accepted and re-organization effected in accordance with the proposed plan provided for

in the ordinance and the documents required for making its provisions effective. The ordinance granting privileges to the new corporation imposed the obligation of expending large sums of money, which the corporation would be obliged to borrow, and of raising other large sums which would be required to satisfy the mortgages in process of foreclosure, to pay the expenses of the receivership and to make such provision as was required for the holders of stock of the interested corporations. The deposit agreement stipulated that the rights of the holders of the participation certificates should be in all respects subject to the prior rights of the holders of bonds and collateral notes to be at any time issued under the first mortgage, consolidated mortgage and collateral note agreement and to the provisions of the agreement. The trust which the depositaries, as the owners of the stock, declared by the agreement was therefore a trust for the benefit of all those who were interested in the terms of the agreement: the city, as the grantor of the ordinance, holding an option for the purchase of the property, the bondholders who had advanced the money to enable the re-organization and reconstruction of the property, and the stockholders. The agreement provided:

"Until the first day of August, 1912, and, to the full extent thereafter which may be permitted by law, until all the consolidated mortgage bonds of the Railways Company which may be issued pursuant to the provisions of the plan shall be fully paid and discharged, the depositaries, or a majority of them, shall be entitled, subject to the provisions hereinafter contained, (1) to vote upon the said capital stock of Chicago Railways Company hereby transferred, and any and all other shares of stock which may at any time be held hereunder, at any and all meetings, regular or special, of the stockholders of the Railways Company, or of any other corporation any part or all of whose stock may be held or be subject to this agreement, and in case the said stock shall be registered on the books of the Rail-

ways Company or any of the companies herein referred to, in any other name, to receive a proxy to vote thereon, and to vote the said stock as the depositaries, or a majority of them, shall from time to time direct; and (2) to take any action, give or execute any consent or take any step which owners of such stock are at that time entitled or authorized to take, give or execute; all with the same force and effect as if the depositaries were at the time the absolute owners of such stock. In voting or causing said stock to be voted the depositaries will exercise their best judgment from time to time to secure suitable directors, to the end that the affairs of the company shall be properly managed, and in voting, and in acting on other matters which shall come before them as stockholders, or at stockholders' meetings, they will likewise exercise their best judgment; but they assume no responsibility and shall be under no responsibility in respect of such management, or in respect of any action taken by them or taken in pursuance of their consent thereto as such stockholders or in pursuance of their votes so cast.  *  *  *  After five years from August 1, 1907, the right and power of the depositaries to vote the shares of stock that shall have or may thereafter become subject to this agreement, shall, subject to the provisions of this agreement, be exercised from time to time in favor of the election of such directors and in favor of or against such propositions (except in respect of the matters mentioned in the last preceding paragraph of this section) as may be directed, in the manner hereinafter provided, by the registered holders of participation certificates of series 1, series 2 and series 3 then outstanding hereunder, to an amount greater than one-half the total number of said equal parts represented by such outstanding certificates of said three series, and the depositaries do hereby agree and bind themselves to so vote as may be thus directed, and not otherwise: *Provided, however,* that no such direction shall be binding or complied with which

shall in anywise affect or impair the rights or priorities of or between the participation certificates of said four series issued and registered as hereinbefore provided, as the said rights and priorities are in said certificate and in this agreement set forth and mentioned."

In this case there is no question of a proxy or its revocation or its revocability. The depositaries and their predecessors are the only stockholders the Chicago Railways Company has ever had. The appellants never had any authority to make a proxy to them, and they cannot revoke any authority which they did not and could not give. The depositaries by the agreement, as required by the plan, retained the title to the stock but by a declaration of trust agreed that all dividends paid or income received from deposited securities should be paid to the participation certificate holders according to certain priorities, but that the depositaries should for five years, and until the consolidated mortgage bonds of the Railways Company should have been paid, retain their power to vote the stock of the Railways Company and to take any step which the holders of such stock are entitled to take. There is nothing in this which is unlawful or contrary to public policy. Executors, administrators, conservators, guardians, receivers and testamentary or other trustees may vote the stock in their hands at all meetings of stockholders without regard to the fact as to who is entitled to receive the beneficial interest in the dividends or the stock itself upon distribution. A trustee who is registered in the stock register of a corporation as the owner of stock is vested with the legal and equitable title, subject only to the provisions of the trust, and has the right to vote his stock and is eligible to the office of director. (*People* v. *Lihme, supra.*) Owners of property may create trusts in it for any lawful purpose, and a trust in the stock of a corporation for the purpose of controlling the corporation is not unlawful. (*Venner* v. *Chicago City Railway Co.* 258 Ill. 523.) A stockholder may vote by

proxy and may select anyone he chooses as his proxy, whether a stockholder or not, and many may choose the same proxy or all may do so. It is therefore not necessarily a violation of law or of the constitution if a majority of the stock of the corporation is voted at an election of directors and the directors are elected by a person who owns no stock and has no interest in the corporation.

While we have held that the pooling of stock for the purpose of electing directors and controlling the corporation is not necessarily illegal, we have also held that an agreement for the purpose of committing the control of the corporation to persons other than the stockholders or to a minority of its stockholders is invalid, and that there is no such thing as an irrevocable proxy to vote stock not coupled with any interest in the stock itself other than the right to vote it. (*Luthy* v. *Ream,* 270 Ill. 170.) The decisions have no application to this case, for there is here no question of a proxy or its revocation, and if there were, there is an interest in the stock besides the right to vote it. The appellees, the depositaries, are trustees having the legal title to the stock for the benefit not only of the appellants and the other assenting and depositing holders of participation certificates, but for all the other persons, corporations, trustees, bondholders, mortgagees and for the city of Chicago. The ordinance was a proposal by the city to all the others for the granting of the privileges mentioned in the ordinance upon the specified terms, which included the creation of the trust in the stock of the Railways Company for the benefit of all the parties to the transaction. All the parties united in the approval and acceptance of the ordinance with all its terms. The trust in the stock, expressly reserving to the depositaries (the stockholders) the right to vote and perform the other duties of stockholders, was made to protect the rights not only of the holders of the participation certificates but of all the other interested parties to the transaction. Where an authority or power is

coupled with an interest or is given as a security it is from
its very nature irrevocable unless there is an express stipu-
lation that it may be revoked. *Chapman* v. *Bates,* 61 N. J.
Eq. 658.

The bill, ignoring the rights of all the other parties, seeks
to secure for the participation certificate holders, alone,
the benefits of the ownership of the stock of the Railways
Company. The city is interested to the extent of fifty-five
per cent of the net earnings of the Railways Company,
which it is entitled to receive with certain deductions.
The bondholders furnished the money which the plan re-
quired to be raised and with the city made possible the re-
organization, which resulted in saving the interests of the
appellants from complete destruction. The participation
certificates were not issued as evidence of stock owner-
ship, and the holders of such certificates are not entitled to
elect the directors of the Railways Company and control its
affairs.

The holders of the first three classes of certificates to
an amount greater than one-half the total number of equal
parts represented by the outstanding certificates of said
three series have a limited right under the agreement, after
August 1, 1912, to control the votes of the depositaries in
favor of the election of such directors and in favor of or
against such propositions as such proportion of said reg-
istered certificate holders may direct in the manner pre-
scribed by the agreement, which also requires the deposi-
taries to call a meeting of the registered holders whenever
requested in writing by registered holders representing not
less than ten per cent of the whole number of equal parts
represented by either series, or ten per cent of the whole
number of said equal parts, upon being indemnified against
the expense of calling and holding such meeting.

The bill prayed that the depositaries be required to file
forthwith in the circuit court and in the present suit a list
of the present holders of all classes of participation certifi-

cates and their addresses. A motion for such an order was made by the complainants and was heard at the same time as their motion for a temporary injunction restraining the depositaries from voting the stock of the Railways Company for the election of any director until the further order of the court. On October 24, 1924, the court entered an order allowing the injunction but denied the motion for the list of certificate holders. The complainants did not demand this list of certificate holders as independent relief to be obtained by their bill, but only as preliminary to the substantial relief of a decree that the provision of the deposit agreement authorizing the depositaries to vote the stock of the Railways Company was no longer operative, that the participation certificate holders were the stockholders of the Chicago Railways Company, and that they were entitled to elect directors and through them manage the corporation. Since the fundamental proposition on which the bill stands, that the holders of the participation certificates are in equity the owners of the stock of the Railways Company, is unsound and the bill shows no right to the substantial relief prayed, it shows no right to any relief which is merely preliminary.

The appellants refer to the right of stockholders to confer with one another and combine for the election of directors and their statutory right to see the voting list and the books, accounts and records of the corporation, and contend that the purpose of the agreement of August 1, 1907, was to assure to each certificate holder the same right to know who were the other certificate holders and to advise and consult with them. This was not at all the object of the agreement. The plan of re-organization, the deposit agreement, the ordinance and its acceptance, the trust deeds and the transfer of the stock of the Railways Company to the depositaries were all parts of a scheme for the re-organization of an insolvent corporation, the preservation of its property, the payment of its

creditors and the continuance of the public utility service
in which the corporation was engaged. Each of the par-
ticipation certificates contains the provision that "this certi-
ficate confers no rights, powers, privileges or interest except
only as in said agreement mentioned and provided, and in
case of any variance between this certificate and said agree-
ment the provisions of the latter shall control." The holder
of each certificate was entitled to receive, in the order of
priority specified in the agreement and subject to its pro-
visions and conditions, eight dollars per annum cumulative
(but without interest) on each of said equal parts out of
the dividends and incomes realized out of the deposited
securities, subject to the agreement as and when such divi-
dends or income might be received and distributed by the
depositaries, and in addition thereto all sums received or
distributed on account of the principal or capital repre-
sented by such deposited securities until the full amount
of $100 shall have been paid, with respect to each of the
equal parts represented by participation certificates of the
particular series, to the registered owners thereof. This
was the extent of the interest of each participation certifi-
cate holder, and the depositaries were trustees not only for
the participation certificate holders but for all the other
parties to the re-organization plan. The complainants not
being stockholders, their rights to an inspection of the
books, accounts and records of the corporation or of the
depositaries are not governed by the common law rules
applicable to stockholders or the statute, under which the
stockholder has the absolute right of inspection and exami-
nation at all reasonable times by virtue, alone, of his own-
ership of stock, subject to the one condition fixed in sec-
tion 38 of the general Corporation act. The complainants'
rights arise out of contract and are limited by the terms
of their contract. While the depositaries are trustees for
the benefit of all the parties to the transaction, they are
not required by the contract by which the trust was created,

or the general doctrine of equity, to permit an inspection of their records unless it appears that the persons seeking such inspection are entitled to some relief to which such inspection would conduce.

The bill in very general terms alleged that the depositaries and directors had been under the control of Blair in all their voting; that Blair had used his control to secure an excessive salary or excessive compensation, amounting to $80,000 a year, and was conducting and intending to conduct the affairs of the corporation for the benefit of the bondholders and to the disadvantage of the stockholders. It was alleged that Blair's salary was fixed by directors whose election and official action he controlled, and he should therefore account for the salary he had received and the unauthorized expenditures which he had made. An accounting by Blair was sought of excessive and unauthorized expenditures. A special demurrer was properly sustained to these allegations. They were of the most general nature, were conclusions and not statements of fact from which the conclusions arose, and concerned questions of business policy or judgment rather than of the good faith of Blair and the directors and depositaries. The appellants say that the allegations were as definite as it was possible for those who were outside the management to formulate or make. The fact that no definite facts were known on which to base the conclusions of improper conduct and control of the affairs of the corporation was not sufficient to relieve the complainants of the rule that the facts constituting their cause of action or ground of complaint must be alleged.

An appeal from the interlocutory order allowing the temporary injunction was taken to the Appellate Court by the depositaries and the order was reversed. On the final hearing in January, 1926, suggestions of damages caused by the granting of the injunction were heard, and the final decree awarded $7459.25 as damages to the deposi-

taries for attorneys' fees and expenses necessarily incurred in procuring the dissolution of the temporary injunction. Error is assigned on this award. It included $7000 as attorneys' fees, and the appellants contend that no attorneys' fees should have been allowed, and if they were allowable the amount is excessive. Counsel fees necessarily incurred in procuring the dissolution of an injunction may be allowed as damages, but where the injunction is only ancillary to the relief sought and its dissolution merely incidental to the defense made on the merits to the whole case, counsel fees incurred by the defendant cannot be assessed. The services for which the fees were allowed in this case were those rendered in the Appellate Court on the appeal from the interlocutory order allowing the temporary injunction. The reversal of the order of the circuit court dissolved the injunction and conclusively established that it was wrongfully sued out. (*Landis* v. *Wolf,* 206 Ill. 392; *Cummings, Kenney & Co.* v. *Mugge,* 94 id. 186.) Its judgment cannot be reviewed on a proceeding to assess damages for the wrongful suing out of the injunction. (*People* v. *Eisenberg,* 288 Ill. 304.) The appellants in that appeal, the sole object of which was to obtain a dissolution of the injunction, were therefore entitled to have their necessary attorneys' fees assessed as damages. The appellants here contend that there was no separation of services rendered in the general defense of the suit from those rendered in procuring the dissolution of the injunction. The evidence, however, was confined entirely to the services rendered in procuring the dissolution of the injunction. Horace K. Tenney testified to his employment to prosecute the appeal and his services rendered in that employment and their value, that he had presented a bill for $10,000 for these services and that it had been paid. For his other services in the suit he had also presented a bill and it had been paid. The testimony in the case is limited to the services on the appeal. The appel-

lants introduced no evidence. The evidence sustains the finding of the court which reduced the amount of the fees from the $10,000 claimed, which was actually paid, to $7000. It is argued that Tenney had argued the case in the circuit court, had familiarized himself with the pleadings and documents and the legal questions in the case, and had investigated, cited and discussed most of the cases mentioned in his brief in the Appellate Court. No doubt these matters, so far as they were proper to be considered, were taken into consideration by the chancellor, who was the same who had heard the arguments on the demurrers and the motion for an injunction and who reduced the amount of the fees $3000.

It is argued that the appellants should not be charged with these attorneys' fees for the reason that the depositaries are entitled to protection by the Railways Company against liability for counsel fees; that the case is equivalent to one brought by some of the beneficiaries under a trust for a construction of its terms, and that in such case the complainants are not chargeable with the attorneys' fees of the trustees, but, on the contrary, the complainants' fees are payable out of the trust fund. The motion for a temporary injunction had nothing of the character of a suit to direct trustees or construe the terms of a trust. It was an application for an extraordinary remedy outside the ordinary course of judicial proceeding, controlling the defendants for the advantage of the complainants in the conduct of the business in which the defendants were engaged, and the statute to revise the law in relation to injunctions and providing that in all cases where any injunction is dissolved the court may assess damages upon the suggestion of the party claiming them is applicable.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE HEARD, dissenting.