## In re BABCOCK et al.

Circuit Court of Appeals, Seventh Circuit.
March 6, 1928.

Rehearing Denied June 12, 1928.

No. 3990.

1. **Courts ⬄404—Circuit Court of Appeals held to have jurisdiction to issue mandamus requiring District Court to permit intervention of certificate holders of corporation in receivership (Jud. Code, § 262 [28 USCA § 377]).**

Circuit Court of Appeals *held* to have jurisdiction, under Judicial Code, § 262 (28 USCA § 377), to issue writ of mandamus directing District Court to permit certificate holders of street railway company in receivership to intervene as parties defendant in certain suits for administration of property of company and foreclosure of mortgage; the suits out of which petition arose being within appellate jurisdiction of the Circuit Court of Appeals.

2. **Corporations ⬄506—Generally stockholders are not entitled to intervention or separate representation in corporate litigation.**

In corporate litigation, the corporate stockholders are represented by the corporation, and generally stockholders or individuals or groups of them are not entitled to intervention or separate representation.

3. **Mandamus ⬄33—Certificate holders of street railway company in receivership held entitled to mandamus directing District Court to permit their intervention in corporate litigation.**

Certificate holders of street railway company in receivership *held*, under the facts, entitled to mandamus directing District Court to permit them to intervene as parties defendant in pending suits for administration of property of company and for foreclosure of mortgage on such property.

4. **Street railroads ⬄55—Intervening certificate holders of company in receivership may be heard on question whether company's bonds secured by mortgage constitute any indebtedness, but not as to precedence of liens.**

Certificate holders of street railway company in receivership on intervening as parties defendant in suits for administration of company's property and foreclosure of mortgage, are not concerned with precedence or rank of liens, since liens are all superior to stock interest, but may be heard on question whether bonds secured by mortgage constitute any indebtedness of company.

5. **Mandamus ⬄38—Circuit Court of Appeals, in absence of abuse of discretion, will not by mandamus direct who shall or shall not be receivers.**

Circuit Court of Appeals will not, in absence of abuse of discretion, control by mandamus discretion of District Court in receivership proceeding, by directing who shall or shall not be receivers, since receivers presumably represent no special interest, but are officers of the court, and as such custodians of the property, to administer it under court's direction and in best interest of all concerned.

26 F.(2d)—10½

6. **Mandamus ⬄38—Circuit Court of Appeals will not by mandamus direct the District Court in the various steps in the administration of property in receivership.**

On petition by certificate holders of street railway company in receivership for mandamus, directing District Court to permit petitioners to intervene, Circuit Court of Appeals will not direct District Court in the various steps in administration of the receivership, by directing the future action of the receivers or of the company.

Page, Circuit Judge, dissenting.

### Mandamus to Permit Intervention.

Petition for writ of mandamus by Orville E. Babcock and others, individually and as a protective committee acting for owners of series 1 certificates of the Chicago Railways Company, to require the judge of the District Court of the Northern District of Illinois to permit petitioners to intervene in certain suits. Peremptory writ issued, with directions.

See, also, 297 F. 466.

The petition is for mandamus, to require respondent, as judge of the District Court of the Northern District of Illinois, to permit petitioners to intervene as a party defendant in certain consolidated suits there pending for administration of the property of the Chicago Railways Company, and for foreclosure of a mortgage on same property, respondent having denied in District Court such leave to file. The petition which the District Court refused leave to file is presented as part of the petition here. Upon order of this court the petition for mandamus was filed, and alternative writ directed to respondent, who thereupon filed answer to the petition, and the cause is here heard upon such petition and answer.

It appears that in 1907, while certain street railways of Chicago were in the hands of receivers under appointment of said District Court, all stockholders and others in interest entered into a so-called "agreement of reorganization and adjustment," the salient features whereof, and the action thereunder, which concern this litigation, being:

(a) The organization of a new Illinois corporation, the Chicago Railways Company, with a capital stock of $100,000, to which was conveyed all the property of the said surface street railways so in receivership.

(b) The legal title of all the stock of said Railways Company was to be and to remain in five individuals named in the agreement, and therein termed "depositaries" or "trustees," hereinafter designated depositaries, with power in such five to fill all vacancies

in their number as they occur, and the depositaries received from the holders outstanding stock of the companies in receivership, and in lieu thereof issued to the stockholders who surrendered their certificates of stock, so-called "participation certificates," issued by the depositaries in proportions specified in the agreement. The certificates are of four series, and the stockholders of the corporations received in exchange for stock such series of certificates as reflected the comparative standing of their stock holdings under the agreement, series 1 certificates having certain specified preferences over all the other series, by way of dividends and in participation, up to $100 per certificate or part, in any surplus remaining for distribution among stockholders upon foreclosure of mortgages or liquidation, and the other series having severally certain rights not here involved, superior to the series following them. The depositaries are required to keep a registry of the participation certificate holdings, and all transfers of them to be upon the registry books. The certificates issued and outstanding number in the units or parts by them represented series 1, 30,800; series 2, 124,300; series 3, 60,000; series 4, 50,000 —a total of 265,100, all to be subject to certain mortgages for which the agreement made provision, and which thereafter were duly given. The entire beneficial interest in the stock of the Railways Company, subject to the agreement, was and is in the participation certificate holders.

(c) The agreement was to be effective until all corporate securities issued under it were paid, and, while in effect, the depositaries elected the directors of the company, but after August 1, 1912, the holders of series 1, 2, and 3 certificates might, by vote of the majority of their holdings, nominate directors whom the depositaries were bound thereupon to elect as such. The plan stated in the agreement for such nomination is, in substance, that upon the request of not less than 10 per cent. of the certificate holders of any one of series 1, 2, or 3, the depositaries shall give a specified notice to all certificate holders of those series, fixing a time for a meeting of such certificate holders for the purpose of nominating directors, such notice to be given by publication, and by mail to each of the registered certificate holders; and thereupon these certificate holders might vote in person or by mail, and such as receive more than half the votes of the three classes, to be elected by the depositaries as directors.

The agreement at once became and has ever since remained effective, and the originally appointed depositaries or their successors, received and continue to hold the legal title to the stock of the Railways Company and, from time to time, have elected the directors. It does not appear that at any time the certificate holders undertook to set in motion the means specified in the contract for submitting to the depositaries names for directors of the company, except that in 1923, certain certificate holders, among them some of the petitioners herein, made request of the depositaries for a list of names of the certificate holders, as shown by the registry books, and that such request was refused by the depositaries unless such certificate holders consented to the revelation.

The petitioners assume to act for themselves, as holders of series 1 certificates, and for such other like holders as have authorized or may authorize them so to act. The original bill was filed December, 1926, by a creditor, and receivers were appointed. The mortgages, aggregating over $100,000,-000, became due February 1, 1927, and bill for foreclosure was filed by the trustee of the first mortgage, which action was consolidated with the original suit, and the same receivers appointed. The other mortgagees were made defendants to the foreclosure suit and have answered.

The particular facts and conditions whereon petitioners rest their contended right to mandamus, and the specific purposes of the requested intervention, are, so far as deemed necessary, set out in the opinion.

Henry S. Robbins, of Chicago, Ill., for petitioners.

Horace Kent Tenney, of Chicago, Ill., for respondent.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The jurisdiction of this court to entertain this proceeding is challenged. If there is jurisdiction, it arises under section 262 of the Judicial Code (U. S. Code, tit. 28, § 377 [28 USCA § 377]), giving the Circuit Court of Appeals power "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." While the cases agree that the authority of this court to issue original writs of mandamus is confined to instances where the appellate jurisdiction of the court is involved, there is far from

unanimity on what constitutes involvement of appellate jurisdiction.

In McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762, it appears the Circuit Court had entered an order staying proceedings in an action there pending, until the disposition of certain proceedings in the state courts of South Dakota. The Circuit Court of Appeals dismissed a petition for a writ of mandamus to require the judge of the Circuit Court to vacate the order of dismissal, and to proceed with the trial of the case. The Supreme Court awarded certiorari, and, in passing upon the question of the jurisdiction of the Circuit Court of Appeals to grant original writs of mandamus, said:

"It is further objected that the Circuit Court of Appeals had no jurisdiction to issue the writ of mandamus, as that writ can only be issued in aid of the appellate jurisdiction of the Circuit Court of Appeals, and, it is contended, as that court had no jurisdiction of the suit when the application for mandamus was filed, it ought to have been dismissed. * * *

"In this case it appears that the original action commenced in the Circuit Court of the United States might have been taken on appeal to the Circuit Court of Appeals. * * * There are not wanting decisions in the federal courts holding different views as to the right to issue such writs as are involved in this case, before the appellate court has actually obtained jurisdiction of the case. There are expressions in opinions of this court to the effect that such writs issue in aid of a jurisdiction actually acquired. But we think it the true rule that where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below. This rule was distinctly stated and the previous cases referred to in Knickerbocker Insurance Co. v. Comstock, 16 Wall. 258, 270 [21 L. Ed. 493]. * * *

"In Ex parte Bradstreet, 7 Pet. 634 [8 L. Ed. 810], the same rule was laid down by Chief Justice Marshall, speaking for the court, requiring a federal court of inferior jurisdiction to reinstate a case, and to proceed to try and adjudicate the same. And see In re Pennsylvania Co., 137 U. S. 451, 452 [11 S. Ct. 141, 34 L. Ed. 738]; Virginia v. Rives, 100 U. S. 313 [25 L. Ed. 667]; United States, Petitioner, 194 U. S. 194 [24 S. Ct. 629, 48 L. Ed. 931]; Barber Asphalt Co. v. Morris [C. C. A.] 132 F. 945 [67 L. R. A. 761].

"Inasmuch as the order of the Circuit Court, staying the proceeding until after final judgment in the state court might prevent the adjudication of the questions involved, and thereby prevent a review thereof in the Circuit Court of Appeals, which had jurisdiction for that purpose, we think that court had power to issue the writ of mandamus to require the Circuit Court to proceed with and determine the action pending before it."

In the case of D., L. & W. R. R. Co., Petitioner, v. Rellstab, 48 S. Ct. 203, 72 L. Ed. —— (decided by the United States Supreme Court January 16, 1928), it appears that a judgment, rendered some terms previously and affirmed by the Circuit Court of Appeals, was by the District Court set aside, and a retrial of the cause ordered. On petition to the Circuit Court of Appeals for mandamus to compel the District Judge to reinstate the judgment that was set aside, the Circuit Court of Appeals, held that the order was not appealable to that court, and that, its appellate jurisdiction not being involved, mandamus would not lie. The Supreme Court, citing McClellan v. Carland, supra, said, "The issue of a mandamus is closely enough connected with the appellate power;" and, holding that the Circuit Court of Appeals was mistaken in denying its power to grant the writ, ordered it to issue, saying further, "It certainly would be unjust to leave the case in the air, because the District Court had made an unwarranted attempt to set aside a judgment that it had no jurisdiction to touch."

The tendency seems to be to construe broadly the court's jurisdiction, rather than to narrow it. Surely the suits out of which the petition here arose are within the appellate jurisdiction of this court, and the subject-matters touching which the petition is presented may at some stage of the case likewise be within this court's appellate jurisdiction. Thus broadly construed, and in the light of the Supreme Court cases cited, we are of the view that the petition appears to be sufficiently connected with this court's appellate jurisdiction to justify our entertaining it. But, having the power to afford relief by mandamus, is a state of facts disclosed whereunder the power should be exercised, and, if so, to what extent?

We cannot regard the situation as in all respects like the denial by the District Court of a prayer for leave to intervene upon a petition duly filed for that purpose. To the extent that such denial would involve the exercise of that court's discretionary power, it cannot be said that such discretion is, at

least in like degree, involved in its denial of leave to file. Such denial should rest upon the proper conclusion that the petition for intervention discloses nothing upon which the court might reasonably and properly exercise its discretion in favor of the requested intervention for any of the purposes for which it is asked.

If, therefore, considering what was before the District Court at the time it refused to permit the petition to be filed, we are of opinion that there was disclosed a situation under which a general or qualified intervention for all or any of the purposes for which it is asked, should have been permitted, we believe we are authorized not only to direct the filing of the petition for intervention, but also to direct that its prayer be granted, in whole or in part.

[2] It is elementary that in corporate litigation the corporate stockholders are represented by the corporation, and that, in general, the stockholders or individuals or groups of them are not entitled to intervention or separate representation. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Corbus v. Alaska Treadwell Gold Mining Co., 187 U. S. 455, 463, 23 S. Ct. 157, 47 L. Ed. 256. If these petitioners were stockholders of the corporation in the ordinary sense, we would be slow to consider seriously, at this stage of the litigation, the allegations of equivocal relations of the board of directors, and of one or more of the receivers, and of the depositaries under the consolidation agreement, as disclosing a situation whereunder intervention should be accorded a group of stockholders whose interests are not shown to be substantially different from those of the stockholders generally.

[3] These certificate holders are in decidedly unique situation. In an action wherein the question was directly involved, it was decided by the Supreme Court of Illinois that they were not stockholders, and were not entitled to the statutory and constitutional rights and privileges of Illinois corporation stockholders. Babcock v. Chicago 'Railways Co., 325 Ill. 16, 155 N. E. 773. But, while they are not stockholders, and there is no contractual provision for their ever becoming stockholders, they are collectively the holders of the entire ultimate beneficial interest in all of the stock, whereof the depositaries, who are not parties to the suits, hold only the bare legal title. These depositaries, during the 20 years since their creation, have elected the directors of the corporation, who likewise have no beneficial interest in the stock. While it is true this relation is contractual, duly assented to by all the certificate holders upon the exchange of their original stock holdings, these successive steps, and this distance between the beneficial owners and the directors, is such that in our judgment the usual relationship between directors of a corporation and its stockholders who choose them cannot, to the same degree, be here invoked to require the conclusion that these ultimate beneficial owners are, in fact, so directly and definitely represented by the directors as in the case of stockholders generally. The very relation thus suggests the advisability of permitting such an intervention as may tend to give assurance that in the litigation nothing of special interest to this peculiar class will be omitted or overlooked.

It was urged on argument that the differing rights of the several series of certificate holders should alone justify the intervention. The petition does not disclose any conflict of interest, actual or threatened, in the suits, as between the different series. Such a situation cannot be anticipated, but is to be dealt with if and when it arises. Indeed, those of the first series, which alone the petitioners represent, are in advantageous position over the others in dividends and on liquidation, and the petition does not make it apparent how the first is or may be prejudiced by or through the others.

The petition makes allegations of conditions under which it is contended the depositaries and the directors should not be permitted to represent certificate holders who object, and that impartiality cannot be expected from the receivers. In our view these matters concern more the declared objects and purposes of the demanded intervention, rather than its propriety in general; and they will be considered with reference to such stated objects and purposes.

It is alleged that the suit under which the receivers were first appointed was collusively brought by the plaintiff therein at the request of the board of directors, and that the board consented to an order for the appointment of receivers. In the petition for intervention it was charged that a collusive judgment had been entered whereon the receivers were appointed, and that the three receivers appointed were suggested by the attorneys for the company, although these last allegations are admitted to be incorrect and to have been inadvertently made, and are not repeated in the petition here. In both petitions it is asserted that at the time receivers were first appointed there was several times more than sufficient money in the

treasury of the company to pay the claim of the creditor by whom the original suit was instituted.

From these facts alone it does not necessarily follow that the directors were in bad faith in bringing about the receivership. While it would be expected there would always be money in the treasury of such a public service corporation serving a great community, this alone would not indicate a favorable financial condition, or even solvency. It appears from the bill, which is made part of respondent's answer here, that there were large debts—that the bond issues, aggregating over $100,000,000, would fall due February 1, 1927, at which time also the company's franchises for operating in the streets of Chicago would expire. The bill on its face discloses a rather desperate situation, under which it could not be said there was impropriety on the part of the directors in consenting to the appointment of receivers for the property, nor on the part of the court in appointing them.

One of the receivers, Henry A. Blair, ever since the organization of the company a director and its president, is charged with having influenced the depositaries to continue to elect him and his associates—whom he is also charged with dominating—as directors of the company. What this influence upon the depositaries was, or how exercised, is not alleged. He is charged with having been a director of the Merchants' Loan & Trust Company, which is trustee under the company's second mortgage, and also with having been vice president and director of the Illinois Trust & Savings Bank, trustee under the third mortgage of the company, and with being at the present time a vice president and director of the Illinois Merchants' Trust Company, a consolidation of and successor in trust to the Merchants' Loan & Trust Company and the Illinois Trust & Savings Bank, and that said trustees under said mortgages at one time owned and sold to their customers large numbers of the bonds. In these things there is nothing necessarily antagonistic to the certificate holders, and they would not of themselves justify intervention in advance of some concrete manifestation of conduct or disposition harmful to their interests.

It is asserted that there is contemplated a consolidation between the Railways Company properties and the Chicago elevated lines, and that Blair is directly or indirectly interested in the latter, and that in any such consolidation he would favor the latter as against the certificate holders. While such a situation, if and when it exists, might tend to make it more desirable that certificate holders have representation other than through the corporation or its board of directors, or even the depositaries, we cannot understand how this should affect his status as a receiver, if, indeed, this could be affected through the requested intervention if granted.

Much is said in the petition and briefs on the subject of refusal by the depositaries in 1923 to supply to one or more of petitioners a list of the registered holders of participation certificates. It is alleged, although not claimed that the depositaries were so informed, that the purpose of demanding the list was to further the election of directors by the certificate holders as provided in the agreement.

The agreement makes no provision for supplying such list to the holders, but specifies that after August 1, 1912, upon request by holders of not less than 10 per cent. of any one series of the first three, the depositaries shall give notice to all the registered holders in these three series of a meeting for the purpose of nominating directors, whom, when nominated, the depositaries are bound, under the contract, to elect as such. The contention is that this further manifests the hostility of the depositaries and of Blair, who is alleged to have influenced the depositaries to refuse the list. We do not think this follows. It is at least questionable whether, in any event, the certificate holders were entitled as of right to have the list. In Babcock v. Chicago Railways Co., supra, demand for the list was refused because it was only incidental to the principal relief there demanded and denied. Likewise, in Thatcher v. Chicago Railways Co., 4 F.(2d) 63, this court refused to direct the list to be given for the reason that no necessity for it was alleged or shown.

The right to the list is not an issue in this case. Indeed, upon the oral argument it was admitted that since the receivership the list had been supplied to petitioners. And in this connection it may be mentioned that, notwithstanding this fact, it does not appear that any considerable number of security holders have joined in the petition—not even the ten per cent. of any one of the first three series necessary, under the agreement, to permit the calling of the meeting for nominating directors or taking such other action by certificate holders as in the agreement specified—the only allegation as to number

being that a *large number* of these certificate holders met and assented to, or afterwards authorized, these proceedings. However, for the purposes herein indicated, we will consider the petition sufficient as a class proceeding.

The specific matters, touching which petitioners seek to intervene, are enumerated in the petition to the District Court under seven paragraphs, which we state, together with our conclusion as to each.

(1) That the petitioners be admitted as defendants to the causes, with same right as the Railways Company to participate in the trials thereof.

To the extent as herein indicated, this will be accorded them.

[4] (2) That petitioners may be permitted to establish, if they can, that a certain mortgage of the company, purporting to secure $2,500,000 of the company's bonds, is no lien upon the company's property, and the bonds thereby secured no indebtedness against the company.

· With the question of the precedence or rank of liens as to each other, petitioners are not concerned, since all debts, secured or unsecured, are superior to stock interests. Whether these bonds constitute any indebtedness of the Railways Company is, of course, of importance to petitioners, and upon this they may be heard.

[5] (3) That one or more disinterested persons acceptable to petitioners be appointed receivers in the cause in addition to or in place of one or more of the receivers appointed, the special province of such new receivers to be to represent and to look after the interests of the holders of the participation certificates issued by the Railways Company.

Receivers, as such, presumably represent no special interest, but are officers of the court and, as such, custodians of the property, to administer it under the court's direction in the best interest of all concerned. Ofttimes in receiverships of large properties a directing or operating officer of the concern is appointed a receiver because of his familiarity with its property and business, but he is not appointed as a representative of anybody but the court. The personnel of the receivers is a matter so wholly within the discretion of the court in which the suit is pending that this court will not, except where abuse of that discretion is apparent, undertake to dominate such discretion by directing who shall or who shall not be receivers. Such abuse of discretion does not here appear.

[6] (4) That the receivers be directed not to enter into any further agreement granting or extending an option to the city of Chicago to purchase, or to designate any other person to purchase, the properties of the Railways Company.

This may involve a step in the receivership which we have no right to anticipate, and upon which we are not at liberty to give directions to the District Court. If and when a situation is presented under which the District Court may have the duty of approving or disapproving any such agreement, petitioners or others interested should have opportunity to be heard on the propriety or advisability thereof, since any purchase in pursuance of such agreement would directly affect the stock and thus the interests of the certificate holders. We cannot anticipate whether or when such contingency may arise.

(5) That the receivers be directed to report to the court to what extent they have concurred in plans formulated for the organization of a new company to take over the properties of the Railways Company, or any tentative ordinances now under negotiation with the city of Chicago.

Again we say we cannot undertake to direct the various steps whereby the District Court shall reach its conclusion upon matters whereon it is empowered to act.

(6) That the receivers be directed to insist, in negotiations with the city of Chicago, that any ordinance to enable a new corporation to take over and operate the properties of the Chicago Railways Company, shall provide for an exchange of securities and certificates on terms based on the fair cash value of the properties, and shall be fair to all interests in said Railways Company, to be determined by impartial arbitrators and by the court, and that said receivers be directed not to concur in or to give their tentative assent to any new ordinances not containing such provision.

We have no right to so direct the District Court. To the extent that the court must act upon such propositions, it is not of necessity controlled or directed by the receivers, who have neither the power nor the right to bind themselves or the court to any specific contract or course of action. As heretofore stated, before any such action is taken by the court as may become binding, opportunity should be accorded the petitioners to be heard thereon.

(7) That the court, in order to advise itself respecting the attitude it should take on any plan of reorganization it may hereafter be asked to approve, proceed immediately to ascertain and establish by evidence what is the present fair value of all the properties of the company, and that the court make the acceptance of said value in any new ordinances to be granted a prerequisite to approval by the court of the ordinances or the transferring of the property to a new company.

This also is a step in the administration of this property whereon we cannot assume by mandamus to direct the District Court. Whether such appraisement of the property is advisable or necessary, must, in the first instance, be decided by the District Court if and when such question arises. There is not disclosed any such absolute duty of the District Court in this respect as to warrant mandamus to direct its discharge, and, of course, in this proceeding, and at this stage of it we cannot predict or determine whether failure to do so might involve error.

Whether, respecting any plan of reorganization, objection thereto by parties interested will be provided for, as in the proceedings in the same District Court in Jameson v. Guaranty Trust Co. et al., or otherwise, we are unable to say or to direct. There the decree of sale specified that if on foreclosure sale the property is purchased pursuant to any plan of reorganization, any one interested objecting to the plan might present his objection to confirmation of the sale, and the court heard objections by bondholders to the plan there presented, and its determination thereon was reviewed here on appeal. (C. C. A.) 20 F.(2d) 808.

The peremptory writ of mandamus will issue directing the respondent or some other judge of that District Court to grant leave to petitioners to file their petition for intervention, and to permit petitioners to intervene in said consolidated causes for the purposes and under the limitations hereinbefore indicated.

PAGE, Circuit Judge (dissenting). This dissent is because, in my opinion, the petition shows no fact entitling petitioners to intervene. Presumably every certificate holder under the agreement of 1907 knows his rights, and it is my belief that, unless much stronger reasons than those shown in the petition appear, no less a number than that required to bring about action under the 1907 agreement should be admitted to intervene.