CHARLES W. LASHER

*v.*

WILLIAM LOEFFLER.

*Opinion filed April 18, 1901.*

1. SPECIFIC PERFORMANCE—*party not entitled to a decree if he has consented to rescission of contract.* Complainant in a bill for specific performance must show that he has always been ready, willing and eager to perform the contract on his part, and he is not entitled to a decree for specific performance if he has consented to a rescission of the contract or has abandoned it.

2. CONTRACTS—*rescission or abandonment may be deduced from circumstances.* A rescission or abandonment of a written contract may be deduced from circumstances or course of conduct clearly evincing such rescission or abandonment.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

CHARLES J. KAVANAGH, for plaintiff in error.

WILLIAM J. HYNES, and EDWARD C. HIGGINS, for defendant in error.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

On a hearing in the superior court of Cook county the bill in chancery filed by the plaintiff in error against the defendant in error for the specific performance of a written contract for the conveyance of certain real property was dismissed at the cost of the complainant. This writ of error brings the record of the proceedings into this court for review.

The written contract between the parties was entered into on the 30th day of August, 1895. It witnessed that the plaintiff in error, Lasher, agreed to sell, and the defendant in error, Loeffler, agreed to purchase, lot No. 9 and the east five feet of lot No. 10, in block 45, in canal trustees' subdivision, etc., in the city of Chicago, at the price of $9000, to be paid for by the assumption of a mortgage then a lien on the premises in the sum of $4000 and the delivery by Loeffler of a warranty deed to Lasher for certain described lots in Carey's subdivision, etc., in the city of Chicago, in full discharge of the remainder of the purchase price; that each of the contracting parties should furnish to the other a complete abstract of title for their respective properties, brought down to the date of the agreement; that Loeffler should pay, and had paid, one dollar as earnest money, and should pay the further sum of one dollar within five days after delivery to him of a warranty deed for said lot No. 9 and a quit-claim deed for the east five feet of said lot No. 10, and after the title thereto had been examined and found to be good.

The bill was filed September 2, 1899, more than four years after the ensealing of the contract. The defense was, the contract sought to be enforced had been abandoned by both parties.

The preparation of the abstracts of title, upon which the parties entered immediately after the execution of the contract, disclosed that one Jacob Glos held a tax deed for the lots which Loeffler had contracted to convey to Lasher. The parties had a conversation about the tax deed about the first day of October, 1895, and Loeffler told Lasher he would see Mr. Glos and see if he could arrange to clear up the title. Within the next two or three weeks they had other conversations, in which Loeffler told Lasher he had not been able to adjust the matter with Mr. Glos, but that he thought he would be able to do so in a short time. The substance of the testimony of Lasher was, that Loeffler stated he would remove the tax title as soon as he could; that no time was stated when he would or could fix it up; that he said he would file a bill in chancery against Glos to remove the tax title; that he (Lasher) saw Loeffler every week or two for fully three months and tried to get him to close up the deal; that Loeffler wanted to delay or avoid filing a bill to remove the tax title, and asked him (Lasher) to wait until he could have time to adjust the matter with Mr. Glos or get a decree clearing the title; that about a month prior to the filing of this bill to compel specific performance he called Loeffler by telephone and urged him to comply with the contract; that prior to that conversation he had talked with Loeffler about the matter two or three times in each year; that he had a deed prepared and executed conveying the property owned by him to Loeffler, and in 1895 deposited this deed, and a check for the net rents that had accrued on the property, with the Chicago Title and Trust Company, to be delivered to Loeffler when he should comply with the agreement, and that he did not withdraw the deed and check

from the title and trust company until the fall of 1899, just before the bill herein was filed.

Loeffler testified that after seeing Mr. Glos in the fall of 1895 he went to Lasher and told him he had been unable to do anything with Glos, and referred Lasher to Mr. Fliehmann, his attorney, to whom he had given charge of the matter; that he had no other conversation with Lasher until the fall of 1896; that then Lasher met him and asked him if he had ever done anything with Glos; that he told him he had not; that Lasher then proposed to trade him his property described in the contract, for a house which he (Loeffler) then owned on Armour avenue; that he afterwards met Lasher on several occasions and they had conversations, but nothing was said by either party about the transaction here sought to be enforced, or either of the pieces of property therein involved, until after this bill was filed,—a period of more than three years; that Lasher never offered to deliver deeds for his property or to deliver possession thereof, and never had any conversation with him about the rents, which Lasher continued to collect, and has collected since the making of the contracts as before.

Mr. Fliehmann, the attorney, testified that Lasher came to his office, and that he, as the representative of Loeffler, had several conversations with Lasher about the matter; that he, the witness, told Lasher that after repeated negotiations and attempts to adjust the matter of the tax title with Mr. Glos they were unable to arrive at any satisfactory settlement; that the only thing left to do was to file a bill to remove the title as a cloud; that Lasher asked witness how long that would take, and was told that it would take six months,—perhaps more,—before they could get through with a hearing of that kind; that Lasher said he would not wait until they filed a bill and cured it up that way, as it would tie up his property too long, and said to make another trial to see if they could not settle with Mr. Glos without bring-

ing suit; that the witness informed Loeffler of the conversations, and further attempts to negotiate with Mr. Glos were made but without satisfactory result; that in the spring or latter part of the winter of 1896 witness had the last conversation with Lasher, and said to him: "Mr. Lasher, the only thing we will do in this matter is this: I will file a bill to remove this cloud, if you will wait. You understand just as well as I do the uncertainty of the time it will take to file a bill to remove that cloud, but if you will wait, Mr. Loeffler has instructed me to file a bill, and I shall do so, to remove the cloud;" that Lasher replied: "No; if you can't make a settlement with Mr. Glos I will not wait. I don't want my property tied up so long;" that witness said, "That is the very best I can do," to which Lasher replied, "That ends the matter then," or "The thing is off," and left the office of the witness; that from that time to this (to the filing of this bill) the witness heard nothing more of this particular deal and never had any further conversation with Lasher regarding it.

M. L. Solomon testified, in substance, that he was a real estate agent and acted for Loeffler in this transaction; that he had frequent conversations with Lasher about the matter, and finally told him he did not believe the Glos matter would be adjusted, and that, as agent of Loeffler, he had given up all hope of clearing up the title; that Lasher then asked him to find some other property to trade for his (Lasher's) property, and suggested that witness should see a Mr. Murphy, to whom witness had sold some property adjoining that belonging to him, (Lasher,) and see if some kind of a trade could not be made with Murphy or if the property could not be sold to Murphy.

Chester Broomel, an employee of the Chicago Title and Trust Company, testified that Lasher deposited some papers in the fall of 1895, and the papers remained there about two years, when Lasher came and took them away.

The plaintiff in error, in rebuttal, denied the material matters so testified to in behalf of the defendant in error.

The chancellor saw and heard the witnesses. The evidence in behalf of Loeffler justified the chancellor in concluding the contract was abandoned by Lasher in the winter of 1895-96; that each of the respective parties retained possession of his property; that Lasher rented and collected the rents accruing on that owned by him for a period of more than three years after the abandonment of the contract before filing the bill. The chancellor had a better opportunity than have we to determine as to the credibility of the witnesses and the value and weight to be given the testimony of each of them. The preponderance in point of numbers was with the defendant in error. There is no reason we should decline to accept the conclusion reached by the chancellor as to the truth of the contested matters of fact. *Higgins* v. *Wisner*, 170 Ill. 220.

A party demanding that a court of chancery shall exercise its jurisdiction to enforce the specific performance of a contract must show he has himself always been ready, willing and eager to perform the contract on his part, and he cannot have a decree for specific performance if it is made to appear he has consented to a rescission of the contract or has abandoned it. (*Phelps* v. *Illinois Central Railroad Co.* 63 Ill. 468; 22 Am. & Eng. Ency. of Law, 1062.) A rescission or abandonment of a contract in writing may be deduced from circumstances or course of conduct clearly evincing an abandonment thereof. (*Hale* v. *Bryant*, 109 Ill. 34; *Harrison* v. *Polar Star Lodge*, 116 id. 279.) The conclusion the party abandoned the contract was warranted by the proofs.

The judgment appealed from is affirmed.

*Judgment affirmed.*