RIVAN DIE MOLD CORPORATION, Plaintiff-Appellant, *v.* STEWART WARNER CORPORATION, Defendant-Appellee.—(EXCHANGE NATIONAL BANK OF CHICAGO, Third-Party Defendant-Appellee.)

(No. 59940;

First District (4th Division)—February 13, 1975.

Harry G. Johnson, of Chicago, for appellant.

Thomas R. Remick, of Chicago (Winston & Strawn, of counsel), for appellee.

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago (Selwyn Zun, of counsel), for third-party defendant-appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from an order of the Circuit Court granting summary judgment solely on the pleadings and depositions against plaintiff, Rivan Die Mold Corporation (Rivan), and in favor of defendant, Stewart-Warner Corporation (Stewart-Warner), and third party Exchange National Bank of Chicago (Bank).

The sole question for review is whether there is any genuine issue as to any material fact requiring a trial on the merits. Although a complete statement of the pleadings and discovery depositions would prolong this opinion unduly, a substantial recitation of their essence is necessitated by the factual nature of the issue before us.

The action was commenced on July 27, 1972, when Rivan filed a complaint against defendant, Stewart-Warner, for an alleged breach of contract. Pursuant to the terms of an agreement, Rivan sought to collect 50% of all invoices submitted to Stewart-Warner by Logan Industries (Logan). As stated in the complaint, Logan had been producing piece parts for Stewart-Warner from certain dies. The dies were originally manufactured by Rivan. At the direction of Stewart-Warner, Logan delivered the dies to Rivan for specified alteration. Thereafter, Rivan made the requested changes, but refused to release the dies without assurance from Stewart-Warner that payment would be received in the amount of $14,775 for work performed on the dies.

The complaint further alleges that on January 19, 1972, the parties met to discuss the matter. Present were Ray Gorzynski, director of purchases for Stewart-Warner; Robert Rivan, president of Rivan; and Saul Coven, d/b/a Logan Industries. A written agreement was entered into that day and executed by all of the parties whereby it was agreed that in consideration of Rivan releasing the dies, Stewart-Warner would "pay directly to Rivan Die Mold Corporation 50% of all Logan Industries invoices submitted to Stewart-Warner until $15,000 has been paid to Rivan." Pursuant to the terms of the agreement, Rivan released the dies. On February 23, 1972, Stewart-Warner paid Rivan the sum of $1,683.18 which constituted 50% of the Logan invoices to date. Thereafter, Stewart-Warner refused further payment, advising Rivan that it had received notice from the Exchange National Bank on February 28, 1972, that Logan had previously assigned and transferred to the Bank any and all accounts and monies due and to become due from Stewart-Warner to Logan. Rivan claims that despite this fact, it is entitled to payment from Stewart-Warner and that the invoices received to date are more than sufficient to enable Stewart-Warner to liquidate an owing balance of $14,775.

Stewart-Warner admits by its answer to the complaint that it had been purchasing piece parts from Logan, that certain dies were brought

to Rivan, and that it had ordered changes of the dies; but Stewart-Warner states that it owned the dies and that the changes were ordered strictly from Logan. Stewart-Warner further admits that a conference had been held for the release of the dies by Rivan at which the pleaded agreement had been made, but it denies that there was adquate consideration to support any agreement. Furthermore, Stewart-Warner avers that the payment of any account receivable to Rivan was subject to an implied condition that there had been no prior assignment of the account receivable by Logan. Additionally, Stewart-Warner raises two affirmative defenses. First, it disputes the amount claimed by Rivan. Second, it alleges that by reason of the notice of assignment from the Bank, it became obligated to pay all Logan invoices directly to the Bank. Rivan filed a reply to the affirmative defenses.

On September 27, 1972, Stewart-Warner filed a third-party complaint against the Bank. The complaint alleges that in the event Rivan is entitled to a judgment against Stewart-Warner, it is entitled to a judgment against the Bank for any amount it may become liable to Rivan. In response, the Bank filed a motion and an amended motion for summary judgment and dismissal of the third-party complaint. In substance, the Bank alleged that it had a perfected security interest in the accounts receivable of Logan, and that any rights of Rivan were subservient and unrelated to its claim. Thereafter, Stewart-Warner moved to strike the Bank's motion or, in the alternative, for summary judgment against Rivan. Subsequently, Rivan moved to strike Stewart-Warner's motion and for a grant of summary judgment against Stewart-Warner.

On October 4, 1973, an order was entered dismissing the third-party complaint and granting summary judgment in favor of Stewart-Warner against Rivan. Consequently, Rivan's complaint was dismissed, and its motion for summary judgment was denied.

With regard to summary judgment, section 57 of the Civil Practice Act provides that a "* * * judgment or decree sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Ill. Rev. Stat. 1971, ch. 110, par. 57.

■■■ The purpose of summary judgment is quite clear. It is a means to avoid the expense and delay of trial where no genuine issue of fact exists. (*Allen v. Meyer,* 14 Ill.2d 284.) The procedure is not designed to try an issue of fact, but rather to determine whether one exists. (*Weber v. Northern Illinois Gas Co.,* 10 Ill.App.3d 625, 295 N.E.2d 41.) We must note that while summary judgment is to be encouraged, it is a remedy to

be awarded with due caution in view of its drastic nature. (*Solone v. Reck*, 32 Ill.App.2d 308, 177 N.E.2d 879.) Accordingly, in making a determination as to the propriety of summary judgment, courts must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent in order to determine whether there is a genuine issue as to a material fact. *Lumbermens Mutual Casualty Co. v. Poths*, 104 Ill.App.2d 80, 243 N.E.2d 40.

From the outset we must comment that we are not passing on the issues raised in the pleadings. We are merely determining the propriety of the trial court's grant of summary judgment. After a thorough review of the record, we are of the opinion that there were genuine issues of material fact in the action by Rivan against Stewart-Warner. Therefore, the grant of summary judgment in said suit is reversed and remanded.

The record does establish several uncontroverted facts. Prior to January 19, 1972, Stewart-Warner purchased from Logan piece parts produced by certain dies. The dies were subsequently delivered by Logan to Rivan for changes. Thereafter, Rivan made the requested changes, but refused to release the dies without assurance that it would be paid for its efforts. Consequently, the dies remained unproductive on Rivan's premises.

The discovery deposition of Raymond Gorzynski (manager of Purchases for Stewart-Warner) sets forth further uncontested facts. In his deposition Gorzynski stated that his major concern was to see that the dies were returned to Logan so that Logan could resume the manufacture of piece parts for Stewart-Warner. Accordingly, Gorzynski arranged a meeting at his office between the parties to resolve the matter. In addition to himself, George Zing, Rivan's buyer; Robert Rivan, president of Rivan; and Saul Coven, d/b/a Logan Industries, were present. At the meeting the written agreement was prepared by an attorney for Stewart-Warner and executed by all the parties. Gorzynski stated that he had the authority to bind the company to the agreement. He signed a letter of agreement addressed to Logan in which it was recited that in consideration of Rivan releasing the dies, Stewart-Warner would "pay directly to Rivan 50% of all Logan Industries invoices submitted to Stewart-Warner until $15,000 has been paid to Rivan." The letter requested acknowledgment. The following day Rivan replied by letter that it was in receipt of Stewart-Warner's letter and that it would fulfill the agreement as stated by Stewart-Warner. These facts are all uncontested.

Clearly, the focal point of the present matter is the agreement entered into by the parties, for it is determinative of their respective rights and obligations. Stewart-Warner emphasizes that the trial court had before

it the written agreement, the terms and language of which no one disputed. It argues, and the trial court so held, that the agreement constituted a mere assignment of accounts receivable from Logan to Rivan; and since Rivan failed to perfect its security interest in those accounts, its claim was subordinate to that of the Bank as a matter of law. Thus, upon the basis that the agreement was an assignment, Stewart-Warner urges that the case is an appropriate one for summary judgment in its favor.

It bears reemphasis that the purpose of summary judgment is merely to determine whether there is a genuine issue of material fact, and only where there is no such genuine issue of fact is the case a proper one for summary judgment. Returning again to the instant situation, if in fact it could be said as a matter of law that the agreement in question is an assignment, we would have a proper case for summary judgment, for all that would remain would be to apply the law to a set of uncontroverted facts. This, however, cannot be said. The creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances as well. *Associated Metals & Minerals Corp. v. Ogelman,* 6 Ill.App.2d 548, 128 N.E.2d 595.

It is true that the trial judge had before him the agreement and that the parties did not dispute the language therein. It is also true that the trial judge had the pleadings and certain depositions to consider. But these materials are not sufficient basis upon which to determine as a matter of law that the agreement in issue constituted an assignment. As stated above, where summary judgment is requested, the various pleadings, depositions, and affidavits must be considered in their aspect most favorable to the opponent. (*Lumbermens Mutual Casualty Co. v. Poths,,* 104 Ill.App.2d 80, 243 N.E.2d 40.) Viewing the instant allegations in their aspect most favorable to Rivan, it is readily apparent that the agreement in question may have constituted a personal undertaking by Stewart-Warner to pay Rivan as opposed to a mere assignment; and if this be true, summary judgment is not appropriate. Where the contract is capable of being understood in more than one sense, resort must be had in the trial court to evidence of extrinsic facts and circumstances to determine the true intent and agreement of the parties. *First National Bank v. Victor Comptometer Corp.,* 123 Ill.App.2d 335, 260 N.E.2d 99.

One need only to look to the agreement itself to recognize that it cannot be held to be an assignment as a matter of law. The agreement unequivocally provides that Stewart-Warner would "pay directly to

Rivan 50% of all Logan Industries' invoices \* \* \*." Certainly, the plain import of these words would indicate a personal undertaking by Stewart-Warner to pay Rivan. Furthermore, one cannot ignore that the agreement was drafted by in-house counsel for Stewart-Warner, and an attorney can and should be expected to appreciate the legal significance of his chosen verbage. There are other unmistakable factors which lead to the impression that more than an assignment may have been contemplated. Why would Stewart-Warner execute the agreement if an assignment of Logan receivables were intended, for the signatures of Rivan and Logan alone would have been legally sufficient. Furthermore, the complaint, itself, alleges that Rivan was seeking a personal assurance from Stewart-Warner for payment due before it would release the dies. Stewart-Warner's denial of this allegation gives rise to a genuine issue as to a material fact. Thus, we hold that the meaning of the agreement is a question of material fact not properly determined pursuant to a motion for summary judgment.

■■ Other questions of fact remain as well. Did Rivan have the authority to withhold the release of the dies? Was the agreement subject to an implied condition that Logan had not made any prior assignments of its accounts receivable as Stewart-Warner alleges? These questions merit the dignity of full investigation at a formal trial so as to allow the parties the opportunity to present further evidence on the matter. Therefore, the judgment in favor of Stewart-Warner and against Rivan is reversed and the cause remanded for further proceedings consistent with this opinion.

We next consider whether the Bank as a third-party defendant was entitled to summary judgment against Stewart-Warner. The sole relief sought by Stewart-Warner is that in the event Stewart-Warner's judgment against Rivan is reversed, a like result should apply to the Bank's judgment against it. We disagree.

In response to Stewart-Warner's third-party complaint, the Bank filed a motion and an amended motion for summary judgment against Stewart-Warner. The Bank alleged that Logan was indebted to it in the amount of $100,000, pursuant to a note dated December 9, 1971; that the note was secured by a security agreement dated May 21, 1971; that a financing statement was properly filed with the Illinois Secretary of State on May 21, 1971; and that Rivan failed to file a financing statement with the Secretary of State to perfect its interest in the accounts receivable of Logan. Thus, the Bank argued that any rights of Rivan against Logan or Stewart-Warner were subservient and unrelated to its rights. The Bank's motion for summary judgment was supported by affidavit and

exhibits detailing the Logan security agreement and the allegations that its security agreement was executed and filed prior to the alleged agreement between Rivan and Stewart-Warner.

Among the exhibits was a copy of its security agreement granting to the Bank a continuing security interest in the following:

> "* * * property of the Borrower, whether now or hereafter existing or acquired and wherever now or hereafter located; All Accounts (whether or ont Eligible Accounts), Contract Rights, Inventory (whether or not Eligible Inventory), Goods (other than Inventory), policies of insurance covering any or all of the Collateral * * * deposits and cash and other property of Borrower now or hereafter in the possession of Bank * * * and all proceeds of any of the foregoing."

Further exhibits show that on January 10, 1972, Logan became in default of the note to the Bank. And on February 28, 1972, the Bank duly sent notice to the debtors of Logan, including Stewart-Warner, notifying them that all invoices were payable to the Bank pursuant to the security agreement.

■■ The above facts are uncontested and support the Bank's position that any rights of Rivan against Stewart-Warner or Logan are subservient and unrelated to its rights. The Bank fully compiled with all applicable provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, pars. 9—106, 9—301, 9—302, 9—312, 9—316, 9—401). Thus, the Bank perfected its security interest in Logan's accounts receivable. Before Stewart-Warner entered into an agreement with Rivan, it was incumbent upon it to check for financing statements on file against Logan. This is indeed a simple process. We hold that the Bank, under the circumstances, was entitled to a summary judgment in its favor and against Stewart-Warner on the third-party complaint.

The summary judgment entered in favor of the Bank in the third-party complaint filed by Stewart-Warner is therefore affirmed.

Affirmed in part and reversed in part and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.