FARNS ASSOCIATES, INC., Plaintiff-Appellant, *v.* SOUTH SIDE BANK, Defendant-Appellee.

First District (1st Division)    No. 80-1001

Opinion filed February 23, 1981.—Rehearing denied March 23, 1981.

Zissman & Hillsberg, of Chicago (Richard W. Hillsberg, of counsel), for appellant.

Block, Levy & Becker, Chartered, of Chicago (Alvin R. Becker, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Farns Associates, Inc. (Farns) brought this action against South Side Bank (Bank) for an alleged conversion of $35,484.40. Both parties moved for summary judgment. The trial court granted summary judgment in favor of the Bank and denied Farns' motion. Farns appeals.

On February 8, 1973, Farns and Patrick Brakie, doing business as Dependable Ambulance Company (Dependable), executed a loan and security agreement. Farns was given a security interest in Dependable's

accounts receivable and all proceeds thereof as collateral for loans made by Farns to Dependable. The agreement specifically gave Farns a security interest by way of assignment of all account proceeds owed Dependable by the Illinois Department of Public Aid, Dependable's principal account debtor. The agreement also granted Farns a power of attorney with regard to these accounts. Farns filed a financing statement concerning this transaction with the Secretary of State of Illinois on February 21, 1973.

On May 23, 1973, the Bank and Dependable executed a security agreement, later augmented, which granted the Bank a security interest in Dependable's accounts receivable and a power of attorney. The Bank filed its financing statement on May 23, 1973. Between May 23, 1973, and October 16, 1973, the Bank made loans totaling $47,181 to Dependable. The Bank conducted a credit investigation of both Patrick Brakie and Dependable but failed to discover Farns' previously filed financing statement.

Commencing September 24, 1973, and until August 15, 1974, the Bank received checks payable to Dependable directly from the Illinois Department of Public Aid. Subsequent to August 15, 1974, all additional checks were sent directly to Dependable and delivered in turn to the Bank. Pursuant to its security agreement, all such checks were endorsed by the Bank with the legend "credited to the account of the within named payee * * *." These checks were collected by the Bank and the loan balance of Dependable reduced by the amount of each collection.

In July 1976, Farns obtained a judgment against Dependable and Patrick Brakie for outstanding loans including but not limited to the security agreement at issue. The judgment remains unsatisfied in excess of $60,000.

In this court, Farns contends: the trial court erred in denying its motion for summary judgment because the rights of the Bank in the funds were inferior to its own; the Bank could not be a holder in due course of the checks; and the trial court erred by refusing to allow Farns to take additional discovery and in not certifying a report of proceedings. The Bank urges Farns failed to perfect its security interest; the Bank was a holder in due course of the cash proceeds received from Dependable, free and clear of any security interest of Farns; and the trial court properly declined to allow additional discovery and to certify a report of proceedings.

■■ Summary judgment may be entered if no genuine issue as to any material fact exists and if the moving party is entitled to a summary judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) "[W]hile summary judgment is to be encouraged, it is a remedy to be awarded with due caution in view of its drastic nature." (*Rivan Die Mold*

*Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 640-41, 325 N.E.2d 357.) Summary judgment should be granted only when the party's right thereto is clear and free from doubt. *Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 731, 388 N.E.2d 1054.

Farns contends it had a prior perfected security interest in Dependable's public aid accounts receivable and all proceeds thereof. Secured transactions are governed by article 9 of the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch . 26, par. 9—101 *et seq.*) Section 9—102(1)(a) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—102(1)(a)) provides in part:

"Except as otherwise provided in Section 9—104 on excluded transactions, this Article applies

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or *accounts*; * * *." (Emphasis added.)

The parties do not dispute that the "Loan and Security Agreement" between Farns and Dependable is covered by this portion of the Code. The agreement specifically grants Farns a security interest in all of Dependable's pubic aid accounts "whether in existence as of the date hereof or created or acquired hereafter and in all proceeds thereof" as collateral for Farns' loans. It is also undisputed Farns' security interest in this collateral attached when Dependable obtained rights in these accounts. Ill. Rev. Stat. 1979, ch. 26, par. 9—203.

It is Farns' position the proper filing of its financing statement perfected its security interest in the collateral pursuant to section 9—302(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—302(1)). Therefore, Farns maintains, the payments made to Dependable by the account debtor constituted "identifiable cash proceeds" of Farns' secured collateral in which Farns maintained a continuing security interest pursuant to section 9—306 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—306). This section reads in pertinent part:

"(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. * * *. *Money, checks, deposit accounts, and the like are 'cash proceeds'.* All other proceeds are 'noncash proceeds'.

(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected

security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 20 days after receipt of the proceeds by the debtor unless

> (a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or
>
> (b) *a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds*; or * * *."
> (Emphasis added.)

■■ In our opinion, section 9—306(1) clearly contemplates that funds resulting from accounts receivable in the form of money or checks are to be considered "cash proceeds" for the purposes of determining whether a creditor holds a perfected security interest in the funds. See *Commercial Discount Corp. v. Milwaukee Western Bank* (1974), 61 Wis. 2d 671, 683-84, 214 N.W.2d 33, 39; *Cissell v. First National Bank* (S.D. Ohio 1979), 476 F. Supp. 474, 489.

■■ The Bank urges Farns' security interest could not be continually perfected by filing a financing statement because the proceeds had taken the form of negotiable instruments (checks) payable to Dependable. Therefore, the Bank claims, the only means of perfection would be by taking possession of the instruments pursuant to sections 9—304(1) and 9—306(3) of the Code (Ill. Rev. Stat. 1979, ch. 26, pars. 9—304(1), 9—306(3)). We disagree. This very argument has been expressly rejected by the Wisconsin Supreme Court in *Commercial Discount Corp.*, 61 Wis. 2d 671, 683-84, 214 N.W.2d 33, 39.

The Bank cites several cases in support of the above proposition, but we find them inapplicable to the facts at bar. In *Feldman v. Philadelphia National Bank* (E.D. Pa. 1976), 408 F. Supp. 24, the issues raised in the instant case were never reached as the party with the perfected security interest in chattel paper took actual possession of the proceeds thereof. In *Security Savings Bank v. United States* (S.D. Iowa 1977), 440 F. Supp. 444, the court held a filed security interest in collateral did not continue past 10 days when the collateral proceeds were converted to noncash proceeds. The case *In re Atlanta Times, Inc.* (N.D. Ga. 1966), 259 F. Supp. 820, is also not pertinent here. It deals with a security interest in money obtained through the negotiation of a negotiable instrument held as collateral.

■■ The Bank also maintains the proceeds are no longer "identifiable" pursuant to section 9—306(2) of the Code (Ill. Rev. Stat. 1979, ch. 26, par.

9—306(2)), and therefore cannot be traced. We disagree. It is undisputed the Bank directly obtained the unendorsed checks representing the proceeds in question from Dependable's account debtor. The Bank admits it endorsed those checks, collected the funds, and credited Dependable's loan balance accordingly. We see no question as to the identification of these proceeds as covered by Farns' perfected security interest and therefore no need for further tracing. To hold otherwise would clearly provide an inequitable windfall for the Bank. See *Citizens National Bank v. Mid-States Development Co.* (1978), ___ Ind. App. ___, 380 N.E.2d 1243.

The authorities cited by the Bank on this issue do not support its contention. The Bank cites Comment 2(c) to the Code (Ill. Ann. Stat., ch. 26, par. 9—306, Uniform Commercial Code Commentary, at 188 (Smith-Hurd 1973)), which reads:

> *"Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds.* What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee *out of ordinary course or otherwise in collusion with the debtor to defraud the secured party."* (Emphasis added.)

The case cited by the Bank, *Merchants National Bank & Trust Co. v. United States* (1973), 202 U.S. Ct. Cl. 343, applied the very rule emphasized above. We find the Bank's actions in its direct receipt and subsequent endorsement of the checks far different in fact and in substance from the receipt of a check from a debtor's account in the ordinary course of business. See *Brown & Williamson Tobacco Corp. v. First National Bank* (7th Cir. 1974), 504 F.2d 998, 1003-04.

We now turn to the question of the parties' priorities with regard to the proceeds in question. We must first note the Bank's actions in its extension of credit to the mutual debtor Dependable. Section 9—407(2) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—407(2)) provides in part:

> "Upon request of any person, the filing officer shall issue his certificate showing whether there is on file on the date and hour stated therein, any presently effective financing statement naming a particular debtor and any statement of assignment thereof and if there is, giving the date and hour of filing of each such statement and the names and addresses of each secured party therein."

The record indicates the Bank conducted several credit checks of both Patrick Brakie and Dependable but, curiously, neglected to make any inquiry at the office of the Illinois Secretary of State. In *Rivan Die*

*Mold Corp.*, 26 Ill. App. 3d 637, the court noted that before a party entered into an accounts receivable financial agreement it was incumbent upon that party to check with the Secretary of State for filing statements on file covering the account debtor. Such an inquiry "is indeed a simple process." 26 Ill. App. 3d 637, 644.

In *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.* (Del. Super. 1971), 294 A.2d 97, 103, *aff'd* (Del. 1972), 294 A.2d 104, the court stated: "The purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding." A properly filed financing statement would therefore serve its intended purpose if a subsequent party would have been put on notice of an outstanding security agreement. *Mid-Eastern Electronics, Inc. v. First National Bank* (4th Cir. 1970), 455 F.2d 141, 146; see also *Manson State Bank v. Diamond* (Iowa 1975), 227 N.W.2d 195; *Whitworth v. Krueger* (1976), 98 Idaho 65, 558 P.2d 1026.

■■ The Uniform Commercial Code is to be liberally construed and applied to promote its underlying purposes and policies, including the clarification of the law governing commercial transactions. (Ill. Rev. Stat. 1979, ch. 26, par. 1—102; *Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 671, 403 N.E.2d 1.) We would weaken the purpose and concept of notice filing under the Code if we did not hold the Bank is bound by that which it would have discovered through inquiry made as a result of Farns' proper and senior filing pursuant to Code provisions. See *Daly v. Shrimplin* (Wyo. 1980), 610 P.2d 397, 404.

■■ The Bank maintains in order for Farns to have properly protected its security interest in the proceeds, Farns should have acted as the Bank did and obtained the funds directly from Dependable's account debtor. We disagree. Section 9—205 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—205) provides in part:

> "A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral * * *, or to use, commingle or dispose of proceeds * * *."

This section eliminates any requirement upon the creditor to police strictly the collateral and the proceeds in the hands of the debtor. (*United States v. Greenwich Mill & Elevator Co.* (N.D. Ohio 1968), 291 F. Supp. 609, 614; *National Acceptance Co. of America v. Virginia Capital Bank* (E.D. Va. 1980), 491 F. Supp. 1269, 1273-74.) Putting such a duty on a secured party would severely undercut significant values of certainty, efficiency and reliance which are at the heart of the Codal emphasis on public filing. See *Citizens National Bank v. Mid-States Development Co.* (1978), ___ Ind. App. ___, 380 N.E.2d 1243; *Community Bank v. Jones* (1977), 278 Ore. 647, 566 P.2d 470.

The Bank's final contention is, even assuming Farns has a prior perfected security interest in the proceeds, the Bank remains entitled to the proceeds because it is a holder in due course of the negotiable instruments received. (Ill. Rev. Stat. 1979, ch. 26, par. 3—101 *et seq.*) If the Bank qualifies as a holder in due course, the Code would permit it to keep the proceeds free of Farns' security interest. See Ill. Rev. Stat. 1979, ch. 26, pars. 3—302, 3—304(5), 9—309.

First, we acknowledge the proceeds received by the Bank were proper negotiable instruments made payable to the order of Dependable. (Ill. Rev. Stat. 1979, ch. 26, pars. 3—104, 3—110.) Because the Bank was not the named payee, proper negotiation of the instruments must occur before the Bank may become a holder of the instruments. The Code states (Ill. Rev. Stat. 1979, ch. 26, par. 3—202(1)):

> "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement * * *."

It is not disputed the payee Dependable never endorsed the instruments. The Bank's authority to self-endorse the instruments therefore becomes important.

We note that in their security agreement of February 21, 1973, Dependable specifically granted Farns a security interest in the account proceeds in question coupled with an irrevocable power of endorsement with respect to any instruments received therefrom. Such a power of negotiation coupled with an interest is from its very nature irrevocable. (*Babcock v. Chicago Rys. Co.* (1927), 325 Ill. 16, 31-32, 155 N.E. 773.) This power was never waived by Farns.

Next, we must consider section 9—306.01 of the Code, which became effective January 1, 1973. This section reads in part (Ill. Rev. Stat. 1979, ch. 26, par. 9—306.01(1), (2)):

> "(1) It is unlawful for a debtor under the terms of a security agreement * * * to sell or otherwise dispose of the collateral and willfully and wrongfully to fail to pay the secured party the amount of said proceeds due under the security agreement.
>
> (2) An individual convicted of a violation of this Section shall be guilty of a Class 3 felony."

It follows any disposition of the public aid account proceeds, thus covered under the security agreement, by debtor Dependable to any party but Farns would be a felony under this statute.

The Bank maintains it received a proper power of endorsement of the instruments through its security agreement with Dependable. However, the source of such authority must be traced to the Bank's principal, Dependable. (See *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512,

774

519, 170 N.E.2d 569.) Since Dependable could not endorse the checks and apply the proceeds to anyone but Farns without being guilty of a felony, it follows necessarily that the Bank cannot have a valid power of endorsement. It is a cornerstone of agency law that there can be no agency in the perpetration of a crime. (*Weare Commission Co. v. People* (1904), 209 Ill. 528, 542, 70 N.E. 1076; *Riordon v. McCabe* (1929), 254 Ill. App. 177, 188-89, *aff'd* (1930), 341 Ill. 506, 173 N.E. 660.) Any attempted endorsement by the Bank is therefore void. The Bank cannot be a holder in due course.

In view of the above, it is unnecessary for us to consider the arguments advanced by Farns concerning the failure of the trial court to permit the taking of additional depositions and to settle the record.

For these reasons the judgment appealed from is reversed. The cause is remanded with directions to enter summary judgment in favor of Farns.

Judgment reversed; cause remanded with directions.

O'CONNOR and CAMPBELL, JJ., concur.