PAUL MONTES, Plaintiff and Counterdefendant-Appellee, *v.* DARNELL HAWKINS, Defendant and Counterplaintiff-Appellant (Hyde Park Bank & Trust Co., Trustee, Defendant).

First District (2nd Division)   No. 83—422

Opinion filed July 17, 1984.

Garland W. Watt and Buglass & Hawkins, both of Chicago, for appellant.

William M. Doty and Peck & Wolf, both of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal emanates from the granting of summary judgment to plaintiff Paul Montes and the denial of similar relief to defendant Darnell Hawkins, in an action for specific performance of an agreement and accounting, and a counterclaim for rescission of the agreement.

Montes was the sole owner of a parcel of land on West 103rd Street in Chicago on which he undertook and partially finished construction of a 47-room motel prior to May 1979. On May 21, 1979, Montes and Hawkins entered into a written real estate sales contract obligating Montes to sell and Hawkins to purchase the partially finished motel and land for $400,000. "Simultaneously" executed between the same parties was another written repurchase agreement (Agreement), which generally required Montes to pay Hawkins $100,000 and Hawkins would assign to Montes certain beneficial interests in a land trust, to which the parties agreed to convey title. Although the real estate contract has been consummated, the Agreement has not, for various reasons ascribed by the parties to each other, as will presently appear. Montes has retained his $100,000 repurchase price, and Hawkins remains sole owner of the property, subject to a financing bank's interest.

No issues are raised as to the pleadings, which are constituted of: Montes' two-count, verified complaint against Hawkins and the Hyde Park Bank & Trust Company, as land trustee (Trustee), for specific performance of the Agreement and for an accounting of profits;

Hawkins' answer, affirmative defenses and counterclaim, which sought rescission of the Agreement for breach of contract; and Montes' answer to Hawkins' demanded bill of particulars and his answer to Hawkins' counterclaim.

Both Montes and Hawkins filed motions for summary judgment. Montes' motion was allowed, and Hawkins was ordered to assign to Montes the beneficial interests specified in the Agreement and to provide an accounting upon Montes' payment to him of $100,000 plus interest. The order denied Hawkins' motion for summary judgment. Hawkins' motion for reconsideration resulted in modification of the order with regard to the assignment, but directed remaining provisions of the order to remain in full force and effect.

The issues raised on appeal include whether: (1) summary judgment, specific performance and accounting were improperly granted to Montes; and (2) Hawkins instead is entitled to summary judgment.

The repurchase Agreement provided, among other things, that: Hawkins would use "his best efforts" to secure interim financing necessary to complete the construction of the motel and to secure permanent financing to pay the interim loan and pay the balance due Montes on his part purchase money mortgage. (Par. 1.) When construction was completed, Hawkins was required to "*** take whatever action is necessary to secure the disbursement of the permanent financing." (Par. 6.) Upon disbursement of the permanent financing, and following conveyance of the property into a land trust, Montes would pay to Hawkins the sum of $100,000 and, upon payment of said sum, Hawkins would assign to Montes one-third of the beneficial interest in the land trust along with a 50% interest in the power of direction in that trust. (Par. 7.) After payment and assignment take place, the parties are to divide the profits from the operation of the motel, with Hawkins or his solely owned corporation to be manager under certain lease terms. (Par. 8.) Both parties agree that the Agreement evidences the intent to form a partnership.

Hawkins obtained interim financing, completed the construction and placed the property in a land trust by October of 1979. He then secured permanent financing in December of 1979 from Highland Community Bank (Bank). In order to secure the permanent financing, the Bank required Hawkins to assign the entire beneficial interest of the land trust to it for collateral purposes; give the Bank complete discretionary control over the power of direction of the land trust; give the Bank a personal guarantee; submit a personal financing statement to the Bank; and assign to the Bank a life insurance policy. Hawkins did so. The assignment given to the Bank by Hawkins

states, in part, "*** that this assignment is for collateral purposes only ***." On December 22, 1981, Montes, through his attorney, among other things, requested Hawkins to inform the Bank that the assignment for permanent financing was in error because it should have been limited to collateral purposes only, rather than the full assignment it purported to be. Montes submitted a proposed form that was identical to the one Hawkins had signed, limiting it to collateral purposes only with the same language. This, Hawkins refused to do.

By affidavits submitted in the summary judgment proceedings, both Montes and Hawkins claimed they were ready, willing and able to comply with their obligations under the Agreement, and each denied the readiness, willingness or ability of the other to so perform. For approximately one year, the terms of the Agreement were not met. On March 31, 1981, the parties met at the Trustee's office to perform the requirements of the Agreement. Montes and his counsel averred that the Trustee's representative, William T. Doody, told them Hawkins could not make the assignment because he had previously assigned all his interest in the trust to the Bank. Doody's affidavit asserted that he recalled no such statement and that if an assignor mistakenly executes a full assignment, rather than one intended for collateral purposes only, the mistake can be routinely and expeditiously remedied by re-execution of the assignment, accomplishable on the same day or so. In an affidavit in support of Hawkins' motion for reconsideration of the summary judgment entered in Montes' favor, the Bank's president, George R. Brokemond, averred that he told Montes prior to May 1979 that if the Bank provided the necessary financing it would require any party who has any interest in the real estate on which the motel is located to personally guaranty payment of the loan; assign life insurance to the Bank in an amount to cover the proportionate share of the loan balance; submit a personal financial statement to the Bank; and, if the real estate was to be held in a land trust, the Bank would require all beneficial owners to personally guaranty the loan and to assign a beneficial interest in the land trust for collateral purposes only. Brokemond averred further that Montes told him he understood the aforesaid requirements, with which he would comply. The Bank loaned Hawkins $50,000 in order to provide funds to start work on completing the motel, since repaid, and made a mortgage loan to the Trust in the amount of $375,000 after the Bank received the documents aforesaid from Hawkins. Montes submitted a countervailing affidavit denying his having ever discussed financial arrangements with Brokemond on any occasion.

The summary judgment leading to this appeal directed Hawkins

to assign a one-third beneficial interest in the Trust and one-half of the power of direction thereof to Montes upon his payment of $100,000 to Hawkins, plus interest. Hawkins was also required to account for one-third of the profits since March 31, 1981. Hawkins moved for reconsideration of the order, supported by Brokemond's previously described affidavit. The Bank, as holder of the land trust power of direction, took the position that it could not consent to Hawkins' assignment of one-third beneficial interest in the Trust until Montes submitted the necessary personal documents. The circuit court modified the summary judgment by making the ordered assignment from Hawkins to Montes "subject only to whatever rights, title or interest *** [the Bank] may have by virtue of a certain assignment 'for collateral purposes only.' "

## I

Hawkins contends that material, triable issues of fact were presented by the pleadings, supporting affidavits and documents. The circuit court, therefore, should not have granted Montes summary judgment, nor specific performance, nor should the court have ordered Hawkins to account for profits from March 31, 1981. Among the disputed factual issues identified by Hawkins was whether: Hawkins acted in accordance with the parties' intent and pursuant to the terms of the Agreement when he assigned interests in the property as collateral to secure the financing; Montes in May of 1979 knew of and agreed to comply with the financing Bank's requirements; and, as of March 31, 1981 and thereafter, Montes was indeed willing to take the steps necessary to comply with the Bank's requirements.

Summary judgment is recognized as a salutary procedure in the administration of justice (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576), but must be cautiously granted so that the respondent's right to trial is not usurped in the presence of material evidentiary conflicting facts and inferences. The function of the procedure is to determine the existence or absence of triable issues of fact, not to try them. (*Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 1138-39, 401 N.E.2d 1287; *Stines v. Otis Elevator Co.* (1982), 104 Ill. App. 3d 608, 610, 432 N.E.2d 1298.) The moving party for summary judgment must affirmatively show a clear legal right thereto, free from doubt. If any facts upon which reasonable persons may disagree are identified, or inferences may be fairly drawn from those facts leading to differing conclusions, the circuit court must deny the motion and direct the resolution of those facts and inferences be made at trial. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Nolan v. Johns-Man-*

*ville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 794, 392 N.E.2d 1352; *Littrell v. The Coats Co.* (1978), 62 Ill App. 3d 516, 519-20, 379 N.E.2d 293; *Century Display Manufacturing Corp. v. D.R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346.) When an agreement contains material terms capable of being understood in more than one sense and pleadings and affidavits conflict as to their meaning or are insufficient as bases upon which to determine their meaning as a matter of law, the circuit court must resort to an evidentiary hearing, rather than summary judgment proceedings, so that the parties may present their respective positions at trial as to the true intent and agreement they have executed. *Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 642, 325 N.E.2d 357; *First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99.

■ In the instant case, paragraph 8 of the Agreement provides that Montes is entitled to share in the profits after he pays Hawkins $100,000 and Hawkins makes the assignments of interest to Montes. Under the Agreement, then, no profits appear payable and no accounting necessary unless and until the exchange takes place, or could have taken place, and is the exchange contemplated by the parties. The parties met for closing at the office of the land Trustee on March 31, 1981. The requisite $100,000 purchase price was neither offered nor paid, and the necessary assignment of any interest was not made. The reasons for these failures are in dispute and are material, triable issues of fact which must be resolved by a trial or evidentiary hearing in order to logically and fairly determine the rights of the parties and the date, if any as yet, from which Montes is entitled to one-third of the profits.

One of the asserted factual disputes is whether Hawkins was justified, if not authorized by the Agreement and its intent, to secure permanent financing by assigning, for collateral purposes only, 100% of the beneficial interest and power of direction in the land trust to the Bank. Hawkins maintains that it was the parties' intent that he use the beneficial interest and power of direction in the trust as collateral to secure the permanent financing in light of language in paragraph 6 of the Agreement, which mandates that Hawkins "shall take whatever action is necessary to secure the disbursement of the permanent financing." In Hawkins' view, this meant compliance with the Bank's financing requirements, since refusal to comply would have denied to the trust the $375,000 loan and also would have been in violation of paragraph 1 of the repurchase Agreement, which required him to use his "best efforts" to obtain permanent financing. Montes takes an op-

posing view and contends that Hawkins should not have executed the assignment to the Bank and to have done so was in breach of sections 13 and 14 of the Agreement, which relate to right of first refusal and conformity of ownership transfers to the terms and conditions of the Agreement. The issue thus present was material since, if Hawkins' assignment was in accord with the intentions of the parties as evidenced by the Agreement, then Montes had the duty of complying with such reasonable conditions imposed on him by the Bank as a person who would have an interest in the real estate. Had these conditions been fulfilled, the Bank could have agreed to the requisite assignment and the closing could have taken place.

There is also a material, triable issue of fact regarding Montes' familiarity with the Bank's requirements as a condition of approving the assignment of a one-third beneficial interest to him. Montes claims that under the Agreement he has no responsibilities in securing or guarantying a loan or otherwise complying with the Bank's requests. Hawkins, through Brokemond's affidavit, contends that Montes knew of and agreed to comply with the Bank's insistence that he submit to it a personal financial statement; assign to it an acceptable and approved life insurance policy; and that if the real estate was to be held in a land trust, the Bank would require all beneficial owners to personally guaranty the loan and to assign a beneficial interest in the land trust for collateral purposes only. Hawkins maintains that Montes knew of the above requirements well before the March 31, 1981, meeting and agreed to comply with them. Montes directly contradicts that position, stating that he never discussed any financing arrangement with Brokemond on any occasion. If, after trial, Hawkins prevails, then Montes must comply with the Bank's reasonable assignment requirements to which he agreed.

The existence of another material, triable issue of fact appears as to whether on the date of closing, March 31, 1981, Montes' unwillingness to submit the necessary financial documents to the Bank was with or without foundation. Montes contends that Hawkins could not assign a one-third beneficial interest to him pursuant to the Agreement because Hawkins had previously executed a "full assignment" to the Bank rather than an assignment for collateral purposes only. Significantly, the document which Hawkins executed in 1979 appears to have been the same form of assignment for collateral purposes only as that later proposed by Montes' attorney to be substituted.

One seeking specific performance of a contract must prove clearly and convincingly that he himself has been always ready, willing and able to perform the contract. (*Jones v. Dove* (1943), 382 Ill. 445,

452-53, 47 N.E.2d 447; *Lasher v. Loeffler* (1901), 190 Ill. 150, 155, 60 N.E. 85.) The Agreement between Montes and Hawkins contemplates that Montes would be entitled to profits only after he paid $100,000, became the owner of a one-third beneficial interest and possessed 50% of the power of direction in the land trust. The trier of fact could indeed find that the closing did not take place on March 31, 1981, due to Montes' inaction. Since Montes could be found to have been unjustifiably unwilling to take the steps necessary to obtain the approval of the financing Bank in order to complete the transaction, his entitlement to profits is in question and must be resolved upon a full trial in the case. *Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 409, 377 N.E.2d 1314; and see *Sullivan v. Burke* (1958), 15 Ill. 2d 101, 153 N.E.2d 824.

It follows from the foregoing that the circuit court's order granting Montes specific performance, summary judgment and an accounting from March 31, 1981, was premature.

## II

Hawkins urges that his motion for summary judgment was improperly denied because the Agreement required his personal services and the contract was indefinite and incomplete. He points to paragraph 8 of the Agreement and its fourth preamble, from which he concludes that he is to be the sole manager of the motel. Thus, he maintains, specific performance of the Agreement requires that Hawkins give his personal services as manager of the motel, which call for his personal skill and judgment, contrary to law, citing *Clark v. Truitt* (1899), 183 Ill. 239, 55 N.E. 683. Hawkins further contends that certain terms relating to future leasing of the property are crucial elements of the Agreement and have been left to future negotiations. For this reason, the Agreement is indefinite, incomplete and therefore unenforceable as a matter of law, relying on *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018. Lastly, Hawkins argues that because the Agreement fails to specify the division of losses between the parties and fails to specify the extent to which they will share in the ordinary and extraordinary expenses of operating the motel, the contract is so uncertain that it is incapable of enforcement, citing *Fox v. Lawson* (1979), 76 Ill. App. 3d 806, 395 N.E.2d 588. We disagree.

Paragraph 8 of the Agreement, as well as the fourth preamble, refer to "Hawkins or his solely owned corporation," as the prospective operator of the motel. The Agreement thereby merely provides that the entity involved, whether sole proprietorship or solely owned

corporation, will operate the motel. The Agreement simply grants Hawkins the choice of who shall manage the motel; it does not require that he personally do so. Further, the operation of the motel does not relate to the partnership and its apportionment of rental income. Here, Montes seeks specific performance only of the assignment of an interest in the land trust and power of direction. The Uniform Partnership Act (Act) (Ill. Rev. Stat. 1979, ch. 106½, pars. 1 through 43) is applicable to the case at bar (*State Farm Mutual Automobile Insurance Co. v. Hanover Development Corp.* (1979), 73 Ill. App. 3d 326, 391 N.E.2d 562), and is deemed part of the Agreement to the same extent as though expressly referred to or incorporated in the contract itself. Subject to the Agreement, remuneration of the partners, their rights and duties, as well as allocation of losses, are governed by section 18 of the Act. (Ill. Rev. Stat. 1979, ch. 106½, par. 18.) The duration of the partnership is covered by section 23 of the Act. Ill. Rev. Stat. 1979, ch. 106½, par. 23.

Paragraph 8 of the Agreement directs the rental by the land trust of the motel to Hawkins or his solely owned corporation for a period of two years with an option to renew for one additional year. This provision does not relate to the operation of the partnership but authorizes the land trust, after the above-described lease expires, to lease the motel to Hawkins or his solely owned corporation, or to any other person or entity. The clause only identifies the time period for the initial lease and who the lessee will be.

From the foregoing, it is evident that the cases relied upon by Hawkins are inapposite and that the circuit court properly denied Hawkins' motion for summary judgment.

Accordingly, the decision of the circuit court granting Montes summary judgment, specific performance and an accounting must be reversed and the cause remanded for trial. The denial of Hawkins' motion for summary judgment is affirmed.

Reversed and remanded in part; affirmed in part.

STAMOS and PERLIN, JJ., concur.